Nichols, Judge,
delivered the opinion of the court:
Plaintiffs in this civilian pay case are ten immigration inspectors, presently or formerly employed by the Immigration and Naturalization Service, claiming compensation for overtime and standby time in addition to overtime already paid to each of them, for the period from May 23, 1969 until February 15, 1974. Throughout this period plaintiffs were assigned to the Immigration suboffices at Port Everglades and West Palm Beach, Florida. Prior to May 12, 1965, their duties consisted primarily of conducting inspections of aliens seeking admission to the United States at these ports of entry.
On May 12, 1965, the Immigration and Naturalization Service and the United States Bureau of Customs adopted *170 a joint inspections procedure modifying plaintiffs’ duties. The object was to conserve person power (we presume manpower is a taboo word) by mutual assumption of one another’s inspectional duties. In addition to their usual tasks as immigrations inspectors, under the new procedure plaintiffs were also required to conduct customs inspections for all commercial vessels and yachts entering the United States between 5:00 p.m. and 8:00 a.m., and on weekends and holidays. It is stated that private yachts, particularly, were —ften —uilty of arriving with short advance radio notification or none at all. Inspectors were scheduled to perform these dual inspections on a rotating basis. In conjunction with overtime inspections, they were also required to serve standby duty at their homes prepared to receive telephone notice of a need for their services, and to depart, at once or nearly, to the port of entry for the purpose of inspecting arriving vessels and aliens. Only four individuals were available for this duty at each port, and, consequently, each plaintiff was on standby duty at least 25 percent of each year. Plaintiffs state that standby duty was obligatory and interfered substantially with their family and social lives. Without disputing about semantics, —e call this duty of awaiting telephone calls standby duty because plaintiffs do. In view of the result we reach, we state the facts according to plaintiffs’ version.
Defendant has offered evidence to the effect that because of the lucrative nature of the overtime income, inspectors were far from reluctant to be available for overtime inspections. A Deputy District Director for the Immigration and Naturalization Service stated that in many ports the inspection officers were free to work out overtime arrangements among themselves, and were not subject to a directive that particular individuals be available at specific times. Plaintiffs assert, and we assume, that the scheduling and posting of names and hours for awaiting calls was a function performed by management.
Although there is some controversy as to whether standby and overtime duties were truly mandatory, we will accept plaintiffs’ assertion that these duties were not assigned on a voluntary basis. Even so, under existing law, *171 we cannot order further premium compensation for plaintiffs.
Plaintiffs have been amply compensated for their overtime duty under the terms of 8 U.S.C. § 1353a, which pertains specifically to employees of the Immigration and Naturalization Service, and provides, in pertinent part:
The Attorney General shall fix a reasonable rate of extra compensation for overtime services of immigration officers and employees of the Immigration and Naturalization Service who may be required to remain on duty between the hours of five o’clock postmeridian and eight o’clock antemeridian, or on Sundays or holidays, to perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes or other vehicles, arriving in the United States from a foreign port by water, land, or air, such rates to be fixed on a basis of one-half day’s additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o’clock postmeridian (but not to exceed two and one-half days’ pay for the full period from five o’clock postmeridian to eight o’clock antemeridian) and two additional days’ pay for Sunday and holiday duty; * * *.
By guaranteeing that inspectors will be paid at least double their normal hourly wage for inspections performed outside of office hours, section 1353a effects a generous system of phantom hours for those employees called upon to conduct inspections at irregular, and perhaps inconvenient, times. An employee who works, for example, two hours or any fraction thereof during the designated hours, is paid for a half-day; if he works three hours, or up to four hours, he is paid for a full days’ work. In other words, for every two hours he works, he is paid for another two hours which in reality he did not work. Hence, the term "phantom” hours. To illustrate the level of compensation of plaintiffs pursuant to section 1353a, overtime and total pay for the year 1973 was as follows:

*172
Regular Salary Overtime Salary Total

Bowser $15,155.20 $17,139.57 $32,294.77
Carter 15.504.80 17,577.03 33,081.83
Cockerel 11.666.40 17,279.61 28,946.01
Grimm 14.553.60 16,206.56 30,505.54
Harvin 13.798.80 21,445.45 34,658.25
Kile 10,164.48 13,798.91 23,963.39
McHugh 18.265.60 23,013.14 41,278.74
Ryals 15.097.60 22,788.98 37,886.58
Smith 14.382.40 17.259.41 31,641.81
Turner 15,155.20 17.564.41 32,719.61
Presumably, this liberal feature is intended in some measure to recompense for the disruption of the home lives of officers who must be available for and report to duty at unusual hours. At least, such disruption is commonly urged as justifying it. The question presented to this court is whether plaintiffs, who have already been paid under section 1353a for hours at the duty station, can recover any further amounts under other statutes pertaining to government employees.
The general provisions governing premium pay for federal employees are contained in subchapter V of 5 U.S.C. §§ 5541-49. Section 5542 sets forth the overall scheme for overtime pay by providing that work in excess of the basic 40 hour workweek shall be compensated at an hourly rate equal to one and one-half times the hourly rate of basic pay of the employee. Section 5545 establishes a pay differential for night, standby, Sunday, irregular, and hazardous duty. Section 5549 precludes any employee from obtaining overtime, or premium, pay, under subchapter V for services for which he has already been compensated under 8 U.S.C. § 1353a. Insofar as relevant, the texts of these provisions are contained in the Appendix following this opinion.
Plaintiffs fix their sights primarily on the § 5545 differential for standby and irregular time. When this is made applicable, no attempt is made to record or calculate the actual hours worked and instead an addition is made to *173 the basic annual salary at an arbitrary rate, not in excess of 25 percent. They say that management abused its discretion in not fixing such a rate for them. They focus less on the time and a half rate under § 5542(a). What we say hereinafter will apply to both so far as the context permits. We may assume that on any day, besides the alleged standby, they will have performed at least eight regularly scheduled hours at the office or duty station.
In light of the prohibition against concurrent premium pay, to the extent that the phantom hours feature of section 1353a is construed to compensate plaintiffs both for being expected to be available at their homes when needed as well as for actual inspections performed at irregular hours, section 5549 would clearly bar any additional payment for standby time under section 5545.
The court need not base its decision concerning the claim for standby time on these grounds, however. Even assuming, arguendo, that section 1353a’s phantom pay does not compensate plaintiffs for the time they are required to expend remaining at home in readiness to make an immediate departure for the port to inspect an arriving vessel, it still does not follow that plaintiffs are entitled to a pay differential under section 5545. The principle that federal employees cannot receive extra compensation for standby time of this nature is firmly established. See, e.g., Aldridge v. United States, 202 Ct. Cl. 365, 479 F.2d 1365 (1973); Moss v. United States, 173 Ct. Cl. 1169, 353 F.2d 746 (1965).
In Moss v. United States, supra, this court held that an attorney for the Immigration and Naturalization Service, who on occasion was ordered to perform telephone standby duty at home after regular daytime working hours and on weekends, could not recover overtime compensation for that standby duty. Except for being required to remain within hearing distance of the telephone, plaintiff was otherwise free to enjoy his normal pursuits. 173 Ct. Cl. at 1172, 353 F.2d at 747. Consequently, the court reasoned that the standby duty, which unarguably restricted Moss’ activities to a degree, nevertheless did not amount to compensable hours of work. Although plaintiffs attempt to distinguish Moss on the ground that the claimant therein *174 was not expected to do anything other than receive telephone calls, while plaintiffs, once called were required to leave their homes and report for duty, this distinction ignores the overriding fact that the standby time was accumulated at plaintiffs’ residences, rather than in their offices. It is now settled that standby time is not compensable unless performed at the claimant’s office or station. See Aldridge v. United States, supra; Detling v. United States, 193 Ct. Cl. 125, 432 F.2d 462 (1970); Moss v. United States, supra; Rapp v. United States, 167 Ct. Cl. 852, 340 F.2d 635 (1964). Moreover, even standby time which is spent exclusively at the place of employment is not entirely compensable. Generally, even when the employee remains on government premises, any time set aside for sleeping or eating, during which the employee in fact does not perform any substantial labor, is excluded from the computation for compensable hours. See Rapp v. United States, supra, 167 Ct. Cl. at 866, 340 F.2d at 642-43. Thus, plaintiffs are barred from recovering for standby status under section 5545.
Although plaintiffs argue that an unreported case decided by a district court in Ohio, Rothgeb v. Statts, Civil Action No. 4082 (S.D. Ohio, Feb. 23, 1973), supports their contentions and should be regarded as controlling, this case in fact seems to follow settled law in regard to the compensability of standby time. In Rothgeb, plaintiffs were federal employees assigned to international air flights as sky marshalls, to protect passengers and crews from skyjackings. In this capacity, plaintiffs were required to remain at a motel located near the airport, essentially in standby status. The hotel accommodations were obtained by and paid for by the government. For purposes of evaluating compensability of standby duty, it appears that the motel rooms could reasonably be regarded as the employer’s premises, or, in' effect, the sky marshall’s offices. This case, thus, is factually distinct from the instant matter, where plaintiffs waited in their own residences to be called to duty. Rothgeb simply does not support awarding compensation for standby time to plaintiffs.
*175 Finally, it should be noted that the statutory provision relied upon by plaintiffs does not apply to them by its own terms. See text of section 5545, set forth in the Appendix following this opinion. Plaintiffs have not shown that the head of the Immigration and Naturalization Service has authorized any premium pay pursuant to section 5545. This cannot be argued to be abuse of discretion because the statute does not apply to plaintiffs. Section 5545 limits compensable standby status to those times when an employee remains "at, or within the confines of, his station.” This, then, creates an inference that standby duty performed at an employee’s residence is not intended to be compensable under section 5545. It might also be noted that in interpreting this premium pay provision in Rapp v. United States, supra, this court concluded that the provision was primarily aimed at the situation of firefighters, whose basic workweek and overtime was composed principally of standing by to respond to any emergencies which might arise.
In view of the express terms of section 5545, and precedent consistently holding that standby duty performed at an employee’s residence is not to be compensated, we cannot find that these plaintiffs are entitled to recover any premium pay based on standby duty. Furthermore, there is no basis for granting a trial on any disputed facts, because the most material fact, i.e., where the standby duty was performed, is agreed upon by the parties.
In addition to their claim for standby pay, plaintiffs seek additional overtime pay for dual inspections which they performed but allege they were not fully compensated for. More specifically, plaintiffs state that there were a number of instances when they performed inspections for which they were paid only a flat rate of $25.00, rather than the amount required by 8 U.S.C. § 1353a. Plaintiffs request an accounting, and a trial to determine whether they are entitled to additional compensation, and if so, to how much.
Other than an affidavit of a union officer representing immigration employees, there is no evidence before us to substantiate the claims that plaintiffs have not been fully paid for all inspections performed in the period for which suit is brought. This affidavit, as defendant points out, is *176 subject to a number of infirmities, but its principal deficiency is that it is not based on the personal knowledge of the affiant, who is not a plaintiff, and who does not, and has not ever performed dual inspections. See Rule 101(f), of the Rules of the Court of Claims. Plaintiffs have not supplied us with any affidavits or statements of their own, nor have they submitted any payroll data in support of their contentions. Plaintiffs nevertheless argue that there is a genuine issue, and that a trial is required so that discovery may proceed. It might be noted, however, that although the government states discovery was available to plaintiffs all along, no attempt has been made since the date of filing, two years ago, to seek discovery, nor has this failure to request discovery been explained.
Finally, these claims were submitted administratively, and, "after a diligent search of the records” denied because nothing was found to substantiate the claims. Bowser v. United States, Administrative Claim to the Immigration and Naturalization Service, letter of George Taempalez, Acting Associate Regional Commissioner, April 16, 1976. In the absence of a showing that the administrative determination is incorrect, or subject to challenge as, for example, being against the substantial weight of the evidence, such a finding should be upheld. See, e.g., Wilmot v. United States, 205 Ct. Cl. 666, 682 (1974); Grover v. United States, 200 Ct. Cl. 337, 353-54 (1973); Morelli v. United States, 177 Ct. Cl. 848, 858 (1966).
In short, in the absence of any supporting documentation for their assertions concerning the inadequacy of compensation for actual inspections, plaintiffs’ request for a trial cannot be granted over an opposing motion for summary judgment.
Accordingly, defendant’s motion for summary judgment is granted, plaintiffs’ cross-motion for summary judgment is denied, and plaintiffs’ petition is dismissed.

APPENDIX

5 U.S.C. § 5542 (1970), as amended, (Supp. V, 1975), provides in pertinent part:
§ 5542. Overtime rates; computation.
*177 (a) For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or * * * in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, * * * at the following rates:
(1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS-10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.
(2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS-10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS-10, and all that amount is premium pay.
*****
5 U.S.C. §. 5545 (1970), as amended, (Supp. V, 1975), provides in pertinent part:
§ 5545. Night, standby, irregular, and hazarous duty differential.
(a) * * * [N]ightwork is regularly scheduled work between the hours of 6:00 p.m. and 6:00 a.m., * * *—
*****
Except as otherwise provided by subsection (c) of this section, an employee is entitled to pay for nightwork at his rate of basic pay plus premium pay amounting to 10 percent of that basic rate. * * *
*****
(c) The head of an agency, with the approval of the Civil Service Commission, may provide that—
(1) an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for irregular, unscheduled overtime duty in excess of his regularly scheduled weekly tour. Premium pay under this paragraph is determined as *178 an appropriate percentage, not in excess of 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS-10 * * *, by taking into consideration the number of hours of actual work required in the position, the number of hours required in a standby status at or within the confines of the station, the extent to which the duties of the position are made more onerous by night, Sunday, or holiday work, or by being extended over periods of more than 40 hours a week, and other relevant factors; or
(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 per centum nor more than 25 per centum, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS-10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position.
*****
5 U.S.C. § 5549 (1970), provides in pertinent part:
§ 5549. Effect on other statutes.
This subchapter does not prevent payment for overtime services or for Sunday or holiday work under any of the following statutes—
*****
(2) sections 1353a and 1353b of title 8;
*****
However, an employee may not receive premium pay under this subchapter for the same services for which he is paid under one of these statutes.