Calvin R. ALDRIDGE et al.

v.

The UNITED STATES.

Thomas B. ADDLESBERGER et al.

v.

The UNITED STATES.

Nos. 411–66 and 426–69.

United States Court of Claims.

Decided June 20, 1973.

Jeffrey M. Glosser, Washington, D. C., atty. of record, for plaintiffs; Albert J. Joyce, Jr., Balboa, Canal Zone, and Pasternak, Kaufmann, Kaufmann & Glosser, Washington, D. C., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen., Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## OPINION

PER CURIAM:

These cases come before the court on plaintiffs' exceptions to a recommended decision filed November 24, 1972, by Trial Commissioner Mastin G. White pursuant to Rule 134(h). The court has considered the cases on the briefs and oral argument of counsel. Since the court agrees with the decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, plaintiffs are not entitled to recover and the petitions are dismissed.

## OPINION OF COMMISSIONER

WHITE, Commissioner: In these two civilian pay cases, which were consolidated for trial purposes, a total of 89 plaintiffs are suing the defendant for additional compensation with respect to the period that began on January 9, 1964, and ended on June 1, 1964.

It is my opinion that the plaintiffs are not entitled to recover.

At the time that is involved in the present litigation, the plaintiffs were working as civilian policemen in the Canal Zone and were assigned to the Cristobal Police District. The entire

Canal Zone, covering a geographical area of approximately 550 square miles, was divided into two police districts, the Cristobal Police District, on the Caribbean side of the Canal Zone, and the Balboa Police District, on the Pacific side of the Canal Zone. The Cristobal Police District covered an area of approximately 355 square miles.

Because of incursions into the Canal Zone by riotous and destructive Panamanian mobs over a period of several days beginning on January 9, 1964 (see findings 4–6), and because of subsequent apprehension concerning the possible renewal of such trouble, the plaintiffs and other police personnel assigned to the Cristobal Police District (as well as police personnel assigned to the Balboa Police District) were required to perform many hours of overtime duty during the period that began on January 9, 1964, and ended on June 1, 1964 (see findings 7 and 8). Throughout this period, the plaintiffs received their regular pay for hours on duty up to 8 in a day and 40 in a week, and they received overtime pay for all time on duty in excess of 8 hours in any day or in excess of 40 hours in any week.

The plaintiffs contend in the present action, however, that the restrictions which were imposed by competent authority on their personal activities during their off-duty time were of such a nature that, except for the time spent in eating and sleeping, they should be regarded as having been on "standby duty" all the time when they were technically off duty during the period January 9–June 1, 1964; and, therefore that all of their off-duty time during the period in question actually constituted compensable hours of work, with the exception of the time spent in eating and sleeping.

Because it was thought necessary that policemen of the Cristobal Police District, while off duty during the period in question, should be available for an immediate call to duty if an emergency should arise, the following restrictions were imposed by competent authority on the personal activities of the policemen while in an off-duty status:[1]

(1) They were forbidden to go outside the geographical boundaries of the district.

(2) They were required to be either at their quarters or at some other place within the district where they could be reached by telephone for an immediate call to duty.

(3) A policeman, before leaving his quarters to go to another place that had a telephone, was required to telephone the Desk Sergeant at the Cristobal Police Station, inform him of such intention, and furnish him the telephone number of the place to which the policeman was going.

(4) A policeman, upon returning to his quarters from another place, was required to telephone the Desk Sergeant and inform him of such return.

With respect to geographical restriction (1) previously mentioned, the District Police Commander in charge of the Cristobal Police District had the authority to permit a policeman to leave the district if the official believed that such an exception was warranted by an emergency situation; and on one occasion the District Police Commander did permit a plaintiff to go into the Balboa Police District for a few hours on an off-duty day. Also, after April 2, 1964, policemen of the Cristobal Police District who were scheduled for leave in the United States were allowed to go to the United States in accordance with the schedule.

As the plaintiffs and other policemen of the Cristobal Police District were forbidden during the period January 9–June 1, 1964, to spend off-duty time at places (even if within the district) that did not have telephones, the plaintiffs and their colleagues were denied the privilege of participating in such recreational activities within the dis-

[1]. Similar restrictions were imposed on the personal activities of policemen assigned to the Balboa Police District.

trict as hunting, fishing, boating, picnicking, and going to the beach while off duty.

On the other hand, the plaintiffs (and their colleagues) actually had great freedom of movement and activity within the district while off duty during the period in question, since the Cristobal Police District covered approximately 355 square miles and there were many different types of places within the district which were equipped with telephones and to which off-duty policemen were free to go during their off-duty time, provided they notified the Desk Sergeant at the Cristobal Police Station in advance of such intention. Included among the places to which policemen were free to go and spend off-duty time were churces, commissaries (grocery stores), theatres, barber shops, cleaning and pressing shops, bowling alleys, social clubs, golf clubs, swimming pools, hobby shops, a clothing store, a first-aid station, a gymnasium, a library, a hospital, and a YMCA. In addition, virtually all of the civilian and military quarters located within the Cristobal Police District were equipped with telephones, and off-duty policemen were free to visit the homes of their friends within the district. Also, there were schools at each of the civilian communities within the Cristobal Police District, the schools were equipped with telephones, and policemen could visit the schools, if they had occasion to go there during off-duty time (*e. g.*, to attend PTA meetings).

If the off-duty time of the plaintiffs during the period January 9—June 1, 1964, constituted "hours of work" because of the restrictions imposed by competent authority on the plaintiffs' personal activities, the Canal Zone Government was obligated by 5 U.S.C. § 911 (1964) [2] to compensate the plaintiffs for their off-duty time (with the exception of time devoted to eating and sleeping). However, it is my opinion that considerable violence to the English language would be done by a holding to the effect that the plaintiffs were engaged in "work" for the Government while they were attending church services, or making purchases at grocery stores, or watching shows at theatres, or visiting the homes of friends, or entertaining friends in their own homes or pursuing hobbies at hobby shops, or swimming at swimming pools, or participating in social activities at social clubs, or playing golf at golf clubs, or getting haircuts, or bowling at bowling alleys, or carrying on in their own homes whatever activities in the way of recreation, diversion, or relaxation that might suit their fancy.

The plaintiffs' situation is readily distinguishable from that involved in other cases where employees were required to remain at a specific place designated by the employer while awaiting a possible need for their services, and the courts held that the waiting time, although not productive, constituted compensable hours of work (*e. g.*, Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); Winsberg v. United States, 98 F.Supp. 345, 120 Ct.Cl. 511 (1951); Farley v. United States, 127 F.Supp. 562, 131 Ct.Cl. 776 (1955)).

From the standpoint of the present litigation, the case of Rapp v. United States, 340 F.2d 635, 167 Ct.Cl. 852 (1964), is especially significant. The claimants in that case were employees of the Office of Civil and Defense Mobilization (and of its predecessor agency) during the period that was involved in the litigation, and they were suing for compensation with respect to the time when they severally served as duty officer for the agency during non-work hours. Generally speaking, the function of a duty officer was to receive telephone calls relating to natural disasters and other emergencies, to develop additional information if necessary, and either to take appropriate action himself or to telephone one of his superiors and re-

---

2. The pertinent statutory provision is now codified as 5 U.S.C. § 5542 (1970).

quest advice regarding the action to be taken. The duty officer function was performed for 16 hours after the close of business on a normal workday, or for 24 hours on a Saturday, Sunday, or holiday.

During the initial phase of the period that was involved in the *Rapp* case, a duty officer performed this function at his home for the 16 hours or 24 hours of the assignment, and he was free to occupy his time at home as he saw fit while awaiting possible telephone calls concerning emergencies. He was not required to perform any other duties. Later, a duty officer was required to perform this function at the agency's control center; and in addition to being available to receive possible telephone calls concerning emergencies, he was required to maintain a log, to make and receive regular telephone calls, and to test electronic equipment. Except for these duties a duty officer was free to read, eat, or sleep (on a cot provided by the agency).

This court held in the *Rapp* case that during the time when duty officers performed the function at home, the hours devoted to such duty did not constitute compensable hours of work (340 F.2d at p. 642, 167 Ct.Cl. at p. 865), but that the hours of duty performed at the control center (except for the time spent in eating and sleeping) were predominantly for the benefit of the employer and, therefore, constituted compensable hours of work (340 F.2d at pp. 642–644, 167 Ct.Cl. at pp. 866–868). Our present plaintiffs had substantially greater freedom of movement and activity during their off-duty time than did the duty officers in the *Rapp* case while functioning in their homes.

The plaintiffs rely principally upon Section 3.06 of Chapter H2 of the Canal Zone Government's Personnel Manual. That section, at the time involved in the present litigation, declared that "standby duty" was compensable for civilian personnel of the Canal Zone; and "standby duty" was defined to mean "remaining, on orders from competent authority, at or within the confines of a duty station or designated area, in a state of readiness to perform actual work when the need arises or when called." The term "duty station or designated area," in turn, was defined in the following language:

(1) An employee's regular duty station.

(2) In quarters or waiting rooms provided by the Panama Canal Company and Government, which are not the employee's ordinary living quarters, and which are specifically provided for use of personnel required to stand by in readiness to perform actual work when the need arises or when called.

(3) In an employee's living quarters, whether public or private property, when specifically designated by competent authority.

Section 3.06 does not appear to be applicable to the plaintiffs' off-duty time during the period January 9–June 1, 1964, because the plaintiffs were not ordered by competent authority to "remain" during off-duty time in their "regular duty station," or in "quarters or waiting rooms * * * specifically provided for use of [standby] personnel," or in their own "living quarters." Actually, the plaintiffs were not ordered to "remain" at any specific place. On the contrary, they were free during off-duty periods to go anywhere they wished within the 355 square miles of the Cristobal Police District, so long as the places to which they went had telephones and they kept the Desk Sergeant at the Cristobal Police Station informed as to their whereabouts.[3]

3. The fact that police officials may initially have referred to "standby" and "standby alert" does not show that they were invoking Section 3.06. It seems plain that those terms were used colloquially and in a general sense, not in the specific meaning of the regulation. These officials later corrected themselves to refer to "on call" status. [Footnote by the court.]

It necessarily follows, from what has previously been said in this opinion, that the plaintiffs have not shown their entitlement to recover, and that the petitions should be dismissed.

The UNITED STATES of America

v.

The KIOWA, COMANCHE AND APACHE TRIBES OF INDIANS,

The Wichita Indian Tribe of Oklahoma and Affiliated Bands et al., Intervenors.

Appeal No. 12–71.

United States Court of Claims.

June 20, 1973.

As Amended on Denial of Rehearing Sept. 28, 1973.

Durfee, Senior Judge, concurred in part and dissented in part and filed opinion in which Davis and Kunzig, JJ., joined.

