**Shirley ATER, et al.**

v.

**The UNITED STATES.**

No. 707–81C.

United States Claims Court.

Sept. 26, 1984.

Sam F. Kibbey, Catlettsburg, Ky., for plaintiffs.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION AND ORDER

SETO, Judge.

This is an action by plaintiffs [1] to recover overtime and premium pay compensation for time allegedly spent in standby status. A trial on the merits was held wherein, at

---

1. This action was originally filed by Shirley Ater and fifteen other plaintiffs. Plaintiffs currently before the court are Messrs. Shirley Ater, James Napier, Jack Steele, George Lovill, Hilbert Schrack, Clyde Roop, Eligh Porter, Donald Roop and Leo Sansom. Gerald Freeman and Willie Dean Murray withdrew from these proceedings prior to trial and were dismissed. Transcript ("Tr.") 937. Plaintiffs Robert Finnicum, John Foutz and Marvin Senter were dismissed from this action for failure to appear and present testimony in support of their claims. *Id.*

the conclusion of plaintiffs' case-in-chief, defendant moved for dismissal of this action, asserting that upon the facts adduced and the applicable law, plaintiffs had failed to show a right to relief. Subsequent to trial, defendant failed to file the required post-trial submissions within the enlarged time period granted by the court. Pursuant to Rule 55 of the Rules of the United States Claims Court ("RUSCC"), plaintiffs moved for a default judgment against defendant. This case is presently before the court on plaintiffs' motion for judgment by default and on defendant's motion to dismiss. For the reasons stated below, plaintiffs' motion for judgment by default is denied, and defendant's motion to dismiss is granted.

## FACTS

Plaintiffs are present and former Wage Board ("WB") and General Schedule ("GS") employees of the United States Department of the Army, Corps of Engineers, Huntington, West Virginia District ("Corps"). They allege that they are entitled to compensation under the Federal Employees Pay Act of 1945 (the "Pay Act"), as amended,[2] and certain of the Pay Act's implementing regulations,[3] for time spent on "standby, ready alert" in performance of their duties for the government. Plaintiffs were employed at various water resource management projects within the Huntington District, and occupied a variety of positions, from maintenance chief to resource manager. Until May 26, 1978, each plaintiff was required, as a condition of employment, to reside in on-site government housing.[4] Plaintiffs contend that this requirement restricted their off-duty activities to such an extent that it qualified them for "standby duty" pay for all periods outside their normal workweeks, excluding

eight hours per day for eating and sleeping.

Plaintiffs initially sought relief by filing individual claims with the General Accounting Office ("GAO"). Having failed to obtain the relief requested, plaintiffs filed their petition (now complaint) in this court on December 7, 1981. Trial was held in Huntington, West Virginia, from April 6, 1983 to April 13, 1983.

At the conclusion of plaintiffs' case-in-chief, defendant moved pursuant to RUSCC 41(b) for dismissal of this action for failure to state a claim, based on the ground that plaintiffs had failed to carry their burden of proof. The court decided to hear all the evidence in the case before rendering a judgment. Defendant, however, declined its opportunity to present evidence, and reasserted its motion to dismiss. The court decided to withhold its ruling on defendant's motion until after the filing of post-trial briefs and, on April 18, 1983, issued an order requiring the parties to submit post-trial briefs and proposed findings of fact within thirty days after the filing of the trial transcript.

Pursuant to RUSCC 39(b)(3), the trial transcript was filed May 18, 1983; accordingly, the briefs were due on June 17, 1983. Instead of receiving the briefs as ordered, the court was inundated by a torrent of motions to extend the time for filing the post-trial briefs and supplementary materials. Plaintiffs were a party only to the first two of four such motions, and filed the requisite submissions at the end of the second allowed enlargement. Defendant thereafter filed two more motions for enlargements of time, which resulted in defendant's submission being due on September 23. Defendant's counsel had ensured

---

**2.** 5 U.S.C. §§ 5541–5549 (1976 & Supp. V 1981).

**3.** 5 C.F.R. §§ 550.141–550.144, 550.151–550.154, and 550.161–550.164 (1981).

**4.** The required occupancy of on-site government housing was established November 9, 1970 by Huntington Engineers District Regulations ("HEDR") § 690–2–6 which provided in part: "*Policy:* The following policy for required occu-

pancy of Government quarters, on a rental basis is established." The occupancy requirement was rescinded on May 26, 1978 by Ohio River Huntington Circular ("ORHC") § 310–2–1 which provided in part: "*General:* Occupancy of Government dwellings as a condition of employment of District [Huntington] projects is no longer required."

the court that the submission would be completed by September 20 and that the extra three days requested were for typing and editing. Defendant once more failed to meet the extension deadline. Defendant's counsel was made aware of the expiration of the enlarged time period, but did not respond.

Based on defendant's continued disregard of this court's orders, plaintiffs filed a motion, pursuant to RUSCC 55(e), for entry of a default judgment against defendant. The court immediately issued an order directing defendant to show good cause why such a judgment should not be entered. The return date of the order to show cause was October 19, 1983.

Counsel for defendant retired from government service on October 19, 1983. On that same day, counsel filed a response to the court's show cause order requesting additional time for newly-appointed counsel to become familiar with the case. Two days later, responsibility for this case was reassigned to defendant's present counsel. Thereafter, defendant quickly prepared its post-trial brief and proposed findings of fact, both of which were accepted by order of this court on December 2, 1983, over the vehement opposition and exception thereto by plaintiffs.

## DISCUSSION

The court has given long and careful consideration to plaintiffs' motion for entry of a default judgment and defendant's motion to dismiss. Plaintiffs' motion is considered first because of its effect on the court's consideration of defendant's motion.

## I. *Judgment by Default Against The United States—RUSCC 55(e)*

Plaintiffs' motion for entry of judgment by default is governed by RUSCC 55(e) which states:

No judgment by default shall be entered against the United States unless the claimant establishes his claim or right to

relief by evidence satisfactory to the court.

In substantially all of the cases where a default judgment has been sought against the United States for failure to comply with a court order, the courts have steadfastly required private litigants to establish their *prima facie* case before granting a judgment by default. *See, e.g., Klapprott v. United States*, 335 U.S. 601, 611, 69 S.Ct. 384, 388, 93 L.Ed. 1099 (1949); *King v. United States*, 31 Ct.Cl. 304, 305–306 (1896); *Marziliano v. Heckler*, 728 F.2d 151 (2nd Cir.1984); *See also*, 10 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 2702, at 543–548 (1983).

■ This court is bound by the plain meaning of the language of RUSCC 55(e). Because plaintiffs, in the case at bar, have failed to satisfy their burden of establishing a right to relief, their motion for judgment by default against the United States must be denied.[5]

This result, however, should not be construed as a condonation of defendant's conduct. The behavior of government counsel previously assigned to this case is inexcusable. In the motion for enlargement of time filed September 16, 1983, counsel contended that she would be unable to file defendant's post-trial brief until September 23, stating: "Defendant's findings and brief will be completed by September 20, 1983. The remaining time requested is to permit typing, review and reproduction." Nothing further was heard from defendant until counsel filed the October 19 "Defendant's Response to the Rule [sic] to Show Cause and Defendant's Opposition to Plaintiffs' Motion for Default Judgment", which is silent as to plaintiffs' motion for judgment by default. The response stated several reasons for the earlier requests for time, some of which may have justified extensions if stated in the earlier motions. As to why the September 23 deadline was exceeded, counsel stated: "An accident of calendaring allowed the final due date to pass unnoticed." In this instance, allowing

5. *See* Discussion Part II B, *infra.*

the due date to pass was not an accident, but an inexcusable error, especially in view of the fact that the court notified counsel shortly after September 23 that she was out of time to file her brief. The court is further distressed by the fact that, although counsel had expressly stated that the briefs would be completed by September 20, she did not file the brief along with the response, nor was any reason offered for the further delay.

When defendant's newly-appointed counsel finally filed the long-awaited submission, he stated that he had had to familiarize himself with the case and *"draft the brief and proposed findings of fact."* Defendant's motion for leave to file out of time (November 22, 1983) at 3 (Emphasis supplied). It is clear that former counsel had never drafted a brief, despite her assurances. Former counsel's apparent mendacity and inexcusable disregard of, and apparent disdain for, this court's orders and rules are ignominious. These chambers will not tolerate such action. While these chambers are pleased with the professional demeanor and diligence displayed by present counsel for defendant, this assiduity is not curative of former counsel's indolence.

Because former counsel's actions effectively obviated the need for any actions by plaintiffs subsequent to October 19, and because it appears to the court that defendant, through counsel, has violated RUSCC 11, the following sanctions are imposed pursuant to RUSCC 11, and it is ORDERED that:

1. Defendant's October 19 response to the order to show cause, filed in violation of RUSCC 11, is hereby stricken from the record;

2. Defendant's post-trial submissions are hereby stricken from the record in accordance with the court's October 12 order to show cause; and

3. Because of the contumacious behavior of previous counsel for defendant, defendant shall pay to plaintiffs their reasonable expenses, including a reasonable attorney's fee, incurred subsequent to October 19, 1983. Within 20 days after the filing of this order and opinion, plaintiffs shall file an accounting of the assessed expenses and fees. Within 10 days of service of plaintiffs' accounting, defendant shall file a response, after which this court will order accordingly.

## II. *Motion To Dismiss*

Because of the disposition of plaintiffs' motion for default judgment, and the sanctions imposed on defendant, defendant's motion to dismiss constitutes a naked contention that plaintiffs have failed to establish a *prima facie* showing of entitlement to overtime or premium pay. Therefore, the applicable statutes and regulations will be applied to the facts adduced at trial.

### A. Statute of Limitations

An initial question was raised concerning whether all or some of plaintiffs' claims were barred by the statute of limitations. The Claims Court statute of limitations [6] bars every claim, of which the court otherwise has jurisdiction, which is not filed within six years from the time such claim accrued. 28 U.S.C. § 2501 (1976). Moreover, the statute is jurisdictional and *must* be strictly construed. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957); *Camacho v. United States,* 204 Ct.Cl. 248, 257–258, 494 F.2d 1363, 1368 (1974); *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Parker v. United States,* 2 Cl.Ct. 399, 402 (1983) [NETTESHEIM, J.]. Thus, plaintiffs' initial contention that the statute of limitations, an affirma-

---

**6.** Plaintiffs cite 28 U.S.C. § 2401 as the pertinent statute of limitations. This statute deals generally with civil actions commenced against the United States. Inasmuch as 28 U.S.C. § 2501 is the statute of limitations directed specifically to actions before the Claims Court, and provides for the same limitations period (six years) as 28 U.S.C. § 2401, we will refer only to 28 U.S.C. § 2501.

tive defense, is waived if not pled, is without merit. In cases against the United States, the statute of limitations stands as a jurisdictional barrier, and it cannot be waived. If the parties fail to raise the statute as a bar to the suit, the court is obligated to do so. *Nager Electric Company, Inc. v. United States*, 177 Ct.Cl. 234, 249, 368 F.2d 847, 857 (1966); *Parker v. United States*, 2 Cl.Ct. 399, 402 (1983) [NETTESHEIM, J.].

Plaintiffs advance the theory that the statute began to run from the time *each* plaintiff filed an administrative claim with the GAO. Not only do plaintiffs fail to cite a single Court of Claims decision in support of this proposition, but the weight of precedential authority is contrary to their contentions.[7] Where a claimant pursues a *permissive* administrative remedy, the statute of limitations is not tolled, nor does the statute run from the administrative filing. *Camacho*, 204 Ct.Cl. at 258, *Schiffman v. United States*, 162 Ct.Cl. 646, 651, 319 F.2d 886, 889 (1963). Moreover, the Court of Claims has held that the filing of a claim with the GAO, as was done by plaintiffs in this case, is not a condition precedent to pursuing an action before the Court of Claims, nor does it toll the statute of limitations. *Burich v. United States*, 177 Ct.Cl. 139, 143, 366 F.2d 984, 987 (1966), *cert. denied*, 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967)[8]; *Iran National Airlines Corporation v. United States*,

175 Ct.Cl. 504, 508, 360 F.2d 640, 641–642 (1966).

Plaintiffs have failed to cite a statute requiring them to submit their claims to the GAO, and have not adduced any agreement with the Corps mandating such an administrative filing prior to seeking adjudication of their claims before this court. Therefore, plaintiffs' filings of claims with the GAO can be viewed as nothing more than the pursuit of permissive administrative remedies. Consequently, this court cannot consider any claims which accrued prior to December 7, 1975 (six years prior to the filing of plaintiffs' action with this court).[9]

B. Overtime and Premium Pay Compensation [10]

Plaintiffs seek overtime and premium pay in compensation for certain time, assertedly spent in "standby" status, beyond that required in a regularly-scheduled workweek. Plaintiffs' original petition requested relief under §§ 5541–5549 of Title 5 of the United States Code, as implemented by §§ 550.141–550.144, 550.151–550.154, and 550.161–550.164 of Title 5 of the Code of Federal Regulations. According to plaintiffs' post-trial submissions, however, compensation as to WB employees is explicitly requested pursuant to 5 U.S.C. § 5544 and, as to GS employees, under 5 U.S.C. § 5545. The statutory underpinnings of

---

7. Plaintiffs cite two federal cases in support of their assertion that the statute of limitations runs from the time each plaintiff filed administratively. *See Hodges v. Callaway*, 499 F.2d 417 (5th Cir.1974); *Bethke v. Stetson*, 521 F.Supp. 488 (N.D.Ga.1979), *aff'd*, 619 F.2d 81 (5th Cir. 1980). These cases are inapposite to the case at bar. Both concern the need for exhaustion of *mandatory* administrative remedies before resort to the judicial system. No such mandatory administrative procedure is required in the action before this court.

8. The *Burich* court, addressing an argument by plaintiff that his claim accrued when it was rejected by the GAO, stated: "[R]ecourse to that office [GAO] has never been deemed a condition precedent to suit in this court. A decision by that office is not binding upon this court, nor

does it govern the timeliness of an action here. Numerous cases have so held." *Burich*, 177 Ct.Cl. at 143, 366 F.2d at 987 (citations omitted).

9. The preceding discussion constitutes this court's memorandum and reaffirmation of its ruling during trial concerning whether the claims of two plaintiffs, Argel Lewis and Marion Peterson, were barred by the statute of limitations. The court allowed testimony concerning these two claims to be presented under an offer of proof. Pursuant to the court's ruling, the offer of proof is rejected, and the claims of those two plaintiffs are to be dismissed.

10. The statutes and regulations cited herein refer solely to those in force when this action was filed with this court on December 7, 1981.

their claims, therefore, are similarly restricted.[11]

For the purposes of this action, the pertinent statutory language as to WB employees provides: [12]

(a) ... an employee subject to this subsection *who regularly is required to remain at or within the confines of his post of duty in excess of 8 hours a day in a standby or on-call status is entitled to overtime pay* only for hours of duty, exclusive of eating and sleeping time, in excess of 40 hours a week. [5 U.S.C. § 5544(a) (1976) (Emphasis supplied).]

As to GS employees, the applicable statutory language is as follows:

(c) The head of an agency, with the approval of the Office of Personnel Management may provide that—

(1) an employee in a position *requiring him regularly to remain at, or within the confines of, his station* during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay ...; or

(2) an *employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime* duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay ... [5 U.S.C. § 5545(c)(1), (2) (1976 & Supp. III 1979) (Emphasis supplied).]

Both § 5544(a) and § 5545(c)(1) of Title 5 of the United States Code necessitate that plaintiffs, in order to be entitled to premium pay, regularly be *required* to remain *at, or within the confines of, their duty stations,* either in excess of 8 hours a day or for longer than ordinary periods of duty, respectively. *See also* 5 C.F.R. § 550.141 (1981). To be effective under the statute, this "requirement" must satisfy the following conditions:

(1) The requirement must be definite and the employee must be officially ordered to remain at his station. The employee's remaining at his station must not be merely voluntary, desirable, or a result of geographic isolation, or solely because the employee lives on the grounds. [5 C.F.R. § 550.143(a)(1)(1981).]

No official order requiring plaintiffs to remain at, or within the confines of, their *duty stations* has been presented. As a condition of their employment, plaintiffs were required to live in government, on-site housing until May 1978. Several plaintiffs testified, however, that they were *not* restricted to the project when off-duty, and specifically recalled a 1978 meeting in which one of their supervisors informed them that it was not necessary to remain at their projects during off-duty hours.[13] Plaintiffs failed to present any language in any order or instruction which could be interpreted as a definite requirement that they remain at their projects.[14] The evidence adduced at trial demonstrates little more than that plaintiffs remained at the dam sites during off-duty hours because they lived there and chose to spend their free time primarily at home.[15]

Furthermore, plaintiffs' contentions that they were required to remain at their on-

---

**11.** *See* Plaintiffs' post-trial brief ("Pl.Br.") at 3–4; and plaintiffs' proposed findings of fact ("PFF") 4, 6, 9, 12, 15, 18, 21, 24, 27.

**12.** Although 5 C.F.R. § 550.101(b) exempts most WB employees from the premium pay regulations, the WB plaintiffs here are among those to whom the premium pay regulations do apply. 5 C.F.R. § 550.101(b)(4) (1981); 5 C.F.R. § 550.113(d) (1981).

**13.** Tr. 107, 108, 212, 340, 385, 386, 578, 604, 605, 607, 608, 671, 778, 852, 858.

**14.** *See Albright v. United States,* 161 Ct.Cl. 356, 361 (1963) (plaintiffs have the burden not only of establishing that they were ordered to work overtime, but also that the order was issued by one with authority to do so).

**15.** Since plaintiffs failed to satisfy the first condition of 5 C.F.R. § 550.143(a), this court will not address the remaining conditions. *See* 5 C.F.R. § 550.143(a)(2) and (3) (1981).

site dwellings during off-duty hours are unsupported by the evidence and insufficient to establish a compensable claim. In outlining the situations where an employee is eligible for premium pay, the regulations define the phrase "at, or within the confines, of his station" as:

> (3) In an employee's living quarters, *when designated by the agency as his duty station* and when his whereabouts is narrowly limited and his activities are substantially restricted. This condition exists only during periods when an employee is required to remain at his quarters and is required to hold himself in a state of readiness to answer calls for his services.[16] This *limitation on an employee's whereabouts and activities is distinguished from the limitation placed on an employee who is subject to call outside his tour of duty*[17] *but may leave his quarters provided he arranges for someone else to respond to calls or leaves a telephone number by which he can be reached should his services be required.* [5 C.F.R. § 550.143(b)(3) (1981) (emphasis supplied).]

Plaintiffs rely on three cases to buttress their claims: *Detling v. United States,* 193 Ct.Cl. 125, 432 F.2d 462 (1970); *Rapp v. United States,* 167 Ct.Cl. 852, 340 F.2d 635 (1964); and *Farley v. United States,* 131 Ct.Cl. 776, 127 F.Supp. 562 (1955). In deciding these cases, however, the Court of Claims relied on the fact that each plaintiff therein had been *required* to remain at his *official duty station* during off-duty hours. The court reasoned that while an officer was at his official duty station, his time was spent exclusively for the benefit of the Government and therefore was compensable. *See, e.g., Rapp,* 167 Ct.Cl. at 865, 340 F.2d at 648; *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89

L.Ed. 118 (1944). Indeed, in *Rapp,* the court found that time spent on-call in a duty officer's own home was *not* compensable because it was not exclusively for the government's benefit. 167 Ct.Cl. at 865, 340 F.2d at 648. *See also Moss v. United States,* 173 Ct.Cl. 1169, 353 F.2d 746 (1965) (telephone stand-by duty while at home is not compensable).

Taken together with 5 C.F.R. § 550.-143(b)(3), these cases indicate that plaintiffs' dwellings, though on-site, cannot be characterized as their duty stations, and that time spent in their on-site dwellings is not compensable because it is not exclusively for the government's benefit. Indeed, the evidence adduced at trial indicates that plaintiffs were permitted to leave the dam sites whenever they wished, provided they arranged for another Corps employee to respond to calls, or left a number where they could be reached. In *Aldridge v. United States,* 202 Ct.Cl. 365, 479 F.2d 1365 (1973), the Court of Claims denied the claims of civilian police officers in the Canal Zone who were required to remain on-call at *all* times, were restricted to their districts, and were required to be available by telephone at *all* times. The restriction in the case at bar is less onerous than the restriction in *Aldridge.* Consequently, plaintiffs fall outside the definition of "at, or within the confines, of his station," and cannot recover under either § 5544(a) or § 5545(c)(1).

Plaintiffs also seek relief under § 5545(c)(2).[18] To be within the ambit of this section, one must occupy a position which necessitates substantial amounts of irregular, unscheduled overtime duty. This section was originally drafted to compensate criminal investigators whose hours of duty are subject to the whims of the

---

**16.** Plaintiffs would have this court believe that the significant portion of section 550.143(b)(3) ends at this point. It is clear, however, from reading the entire section that the portion which plaintiffs would delete is applicable to plaintiffs' jobs, and removes them from the scope of the statutes upon which the claims are based.

**17.** "Tour of Duty" is defined as "the hours of a day (a daily tour of duty) and the days of an administrative workweek (a weekly tour of duty) that are scheduled in advance and during which an employee is required to perform work on a regularly recurring basis." 5 C.F.R. § 550.-103(k) (1981).

**18.** Tr. 908, 921.

criminal mind. 5 C.F.R. § 550.153(a) (1981); *S.Rep. No.* 1992, 83rd Cong., 2d Sess. (1954), *reprinted in* 3 U.S.Code Cong. & Ad.News, 3816, 3824 (1954). The majority of the plaintiffs' overtime work is comparable to that of criminal investigators, in that conditions uncontrollable by plaintiffs dictate when overtime is necessary. Therefore, plaintiffs come within the scope of this section.

Plaintiffs cannot establish a claim under § 5545(c)(2), however, because they fail to satisfy the statutory condition that they be required to perform substantial amounts of irregular overtime. According to the appropriate regulation, a substantial amount of irregular overtime is defined as an "average of at least 3 hours a week" of such work. 5 C.F.R. § 550.153(b)(1) (1981). Plaintiffs failed to adduce any credible evidence that such irregular overtime was either required or performed. Additionally, plaintiffs testified that they had been paid for all overtime work actually performed for which they had applied.[19] Therefore, plaintiffs' claim under § 5545(c)(2) must fail.

Assuming, arguendo, that plaintiffs can overcome the threshold requirements noted previously for recovery under either § 5545(c)(1) or § 5545(c)(2), their claims for relief thereunder still must fail. The prefatory language to § 5545(c) mandates that the Office of Personnel Management ("OPM") authorize the payment of premium pay under this section *before* the appropriate agency head approves such payment. Plaintiffs failed, however, to produce any evidence of either OPM or agency head approval.

The regulations require that each agency head, or authorized official to whom the proper power has been delegated, determine which employees shall receive premium pay in accordance with section 5545(c). 5 C.F.R. § 550.161(a) and (b) (1981); *see also S.Rep. No.* 1992, 83rd Cong., 2nd Sess. (1954), *reprinted in* 3 U.S.Code Cong. & Ad.News 3816, 3824 (1954). The lack of *any* evidence of such approval, together with the affirmative responsibility of each agency head to provide premium pay to those so deserving, leads this court to conclude that no authorization was ever given.

■ Alternately, plaintiffs assert that they were "induced" to remain at their stations and perform the overtime work, and cite *Arnvid Anderson v. United States*, 136 Ct.Cl. 365 (1956) as support. In finding for plaintiffs therein, the court in *Arnvid* relied on the concept that knowledge and silent approval of overtime work may be sufficient to satisfy the statutory requirement that overtime work be "officially ordered or approved." However, this concept must be distinguished from the rule that a "tacit expectation" that overtime work be performed does *not* satisfy the statutory requirement. *See Albright,* 161 Ct.Cl. at 361. Because plaintiffs in the case at bar did *not* file for overtime or premium pay, the proper authorities were never alerted to the alleged overtime activity, and therefore could not have acquiesced to such work. Indeed, plaintiffs have failed to establish even a "tacit expectation" that such work be performed. Therefore, plaintiffs' claim that they were induced to perform overtime work must fail. Consequently, plaintiffs fall short of the requirement of the prefatory language to section 5545(c) and cannot avail themselves of any relief within that section.[20]

## CONCLUSION

For the reasons herein discussed, plaintiffs' motion for judgment by default

---

**19.** Tr. 49, 51, 53, 71, 106, 240–241, 331, 405–407, 586, 587, 603, 680, 716, 775, 782, 805, 884.

**20.** Plaintiffs' efforts to recover under § 5545(c) meet additional problems in that the premium pay provided for in that section is "determined as an appropriate *percentage,*" within certain parameters, of the minimum basic annual salary for GS–10. Because plaintiffs' request relief in terms of specific hours, and *not* a percentage, their formula for calculating their claims is incompatible with the statutory premium pay provisions. Indeed, plaintiffs cannot claim under § 5545(c) and simultaneously request their relief in terms of hours. *See Bowser v. United States,* 215 Ct.Cl. 168 (1977).

against the United States is DENIED, but defendant's proposed findings of fact, post-trial brief and post-trial reply brief will be stricken from the record pursuant to this court's order set forth in Part I of the Discussion. Defendant's motion for dismissal of plaintiffs' claims is GRANTED. The Clerk will dismiss plaintiffs' petition.

IT IS SO ORDERED.