Josephine HUSKEY, Plaintiff–
Appellant,

v.

Michael H. TRUJILLO, Director of the Indian Health Service, Department of Health and Human Services, Defendant–Appellee.

No. 02–1022.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 30, 2002.

Steven J. Shamburek, Law Office of Steven J. Shamburek, of Anchorage, Alaska, for plaintiff-appellant.

Mary K. Doyle, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; Timothy S. Burgess, United States Attorney; and Barbara C. Biddle, Attorney.

Before NEWMAN, SCHALL, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Josephine Huskey appeals from the decision of the United States District Court for the District of Alaska that granted summary judgment in favor of Michael H. Trujillo, Director of the Indian Health Service, Department of Health and Human Services ("Agency"), and that dismissed her complaint seeking premium pay under the Federal Employees Pay Act, 5 U.S.C. §§ 5544–45 (2000) ("FEPA"), and the Fair Labor Standards Act, 29 U.S.C. § 207 (2000) (the "FLSA"). *Huskey v. Trujillo*, No. A97–0394–GV (HRH), slip op. at 13 (D.Alaska, Nov. 26, 1999). FEPA provides for premium pay for "an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty." 5 U.S.C. § 5545(c)(1). The FLSA requires employers to pay employees at a rate of one and a half times their regular rate of pay for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). Ms. Huskey, who worked as an operating room nurse at the Alaska Native Medical Center ("ANMC" or "the hospital") between 1985 and 1997, claimed that the Agency (which operated ANMC) violated both statutes by its refusal to compensate her for hours during which she was on-call but was not called into work. The district court concluded that Ms. Huskey was exempt from the relevant overtime compensation provisions of the FLSA and that her activities were not sufficiently restricted during her on-call periods to warrant payment under FEPA. We affirm.

## BACKGROUND

### I.

The pertinent facts are not in dispute.

As part of her duties as an operating room nurse, Ms. Huskey was required to be on-call at various times. Though her schedule varied, she generally was on call for an average of one weekend (4:00 p.m. Friday until 7:30 a.m. Monday) and approximately one to two weeknights (4:00 p.m. until 7:30 a.m. the following morning) per month. *Huskey,* slip. op. at 2. ANMC permitted nurses to trade on-call duties, but Ms. Huskey averred that rearranging her call schedule proved difficult in practice.

ANMC did not designate a particular place where nurses were to be while they were on-call. Instead, during their on-call periods, nurses were required to be available by phone, either directly or through a pager. A nurse receiving a call or a page was required to return it within five minutes and to report to the hospital within thirty minutes. *Id.* at 3. Nurses were compensated for the time spent at work after being called in. Ms. Huskey states that she responded to calls immediately. On average, Ms. Huskey was called into work five to six times each month. *Id.*

Ms. Huskey contends that the requirement that she respond to calls and arrive at the hospital expeditiously after receiving calls placed onerous restrictions on her personal activities. For example, to ensure that she could reach the hospital within thirty minutes of receiving a call, Ms. Huskey had to stay within an area encompassing Anchorage described as "the Anchorage Bowl," which precluded her from visiting her cabin, fishing at her favorite venues, cross-country skiing, jogging, caribou hunting, or engaging in numerous other recreational activities. In addition, Ms. Huskey contends that the unpredictability of calls and the requirement that she respond rapidly precluded her from partaking in various activities within the Anchorage Bowl itself. Ms. Huskey alleges that because she did not know whether she would be paged and could not risk a delay in reporting to the hospital when she was paged during her on-call periods, she could not stay at home without a babysitter present to take care of her children, shop at stores with long lines, host dinner parties, dine out, or attend hockey games. On the other hand, Ms. Huskey was able to shop at certain stores and to attend church during on-call times, albeit at the risk of having to leave prematurely.

## II.

On October 2, 1997, Ms. Huskey filed suit in the United States District Court for the District of Alaska under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (2000),[1] alleging that she was entitled to compensation for on-call periods pursuant to, *inter alia,* FEPA, 5 U.S.C. §§ 5544–45, and the FLSA, 29 U.S.C. § 207(a). *Huskey,* slip. op. at 2–3. In due course, the parties cross-moved for summary judgment. Addressing the motions, the district court considered first whether Ms. Huskey was entitled to recovery on the ground that the restrictions placed on her during on-call periods were sufficiently onerous to trigger entitlement under FEPA. In so doing, the court applied the seven factor test stated by the Ninth Circuit in *Owens v. Local No. 169, Association of Western Pulp & Paper Workers,* 971 F.2d 347, 351

---

1. In relevant part, section 1346(a)(2) provides the district courts with jurisdiction over actions against the United States based upon "any Act of Congress" or "any regulation of an executive department" where the amount sought in recovery does not exceed $10,000.

(9th Cir.1992).[2] Courts have used the *Owens* factors to determine whether an employee's activities are so restricted during on-call periods that premium pay under FEPA may be warranted. *See, e.g., Brown v. United States,* 31 Fed.Cl. 585, 588 (1994). The district court concluded that "[b]ecause Huskey was free to engage in personal activities while on-call and because she agreed to the on-call policy, Huskey is not entitled to compensation for time spent on-call under FEPA." Slip. op. at 12. Essentially, the court determined that Ms. Huskey was able to use her on-call time for personal purposes instead of for the benefit of her employer, so that, in the words of the Supreme Court case that spawned the jurisprudence regarding compensability of on-call time, Ms. Huskey was "waiting to be engaged," and not "engaged to wait." *Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

As for Ms. Huskey's FLSA claims, the district court found that as a nurse employed in a "professional capacity" pursuant to 29 U.S.C. § 213 (2000), Ms. Huskey was exempt from coverage under the FLSA. *Id.; see also* 29 C.F.R. § 541.3(a), (e) (2001)(defining the scope of the FLSA's "professional capacity" exception). Accordingly, the court granted summary judgment in favor of the government and dismissed Ms. Huskey's complaint. Ms. Huskey appealed to the Ninth Circuit, which transferred the case to us pursuant to 28 U.S.C. § 1631 (2000).

## DISCUSSION

### I.

▇▇▇ We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(2). We review a district court's grant of summary judgment without deference, applying anew the same standard used by the district court. *Transclean Corp. v. Bridgewood Servs., Inc.,* 290 F.3d 1364, 1369 (Fed.Cir.2002). Thus, we may affirm the summary judgment in favor of the government only if, after drawing all reasonable inferences in Ms. Huskey's favor, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "there is no genuine issue of material fact and ... the [government] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties do not dispute the operative facts surrounding Ms. Huskey's on-call arrangement with ANMC. In addition, Ms. Huskey does not challenge the district court's dismissal of her FLSA claims. Accordingly, the case turns on the legal question of whether, under FEPA, the Agency was required to pay Ms. Huskey premium pay for time spent on-call but not working. *See Dana Corp. v. United States,* 174 F.3d 1344, 1347 (Fed.Cir.1999) ("[s]ummary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law."). We review questions of law *de novo. Bowen v. United States,* 292 F.3d 1383, 1385 (Fed.Cir.2002).

---

**2.** The seven factors set forth in *Owens,* which involved a claim for compensation under the FLSA, are: "(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on [the] employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." 971 F.2d at 351 (citations omitted).

Ms. Huskey argues that the district court erred in holding that the restrictions placed on her during on-call periods were not sufficiently restrictive to trigger an obligation on the part of the Agency to pay her premium pay under FEPA. According to Ms. Huskey, the court misapplied the *Owens* factors and failed to appreciate the severity of the Agency's on-call restrictions, which she says effectively limited her mobility to a narrow geographical area and precluded her from conducting personal activities from entertaining friends to attending sporting events. Ms. Huskey argues that, taken together, the requirements that she be available by phone or pager at all times, that she return any call or page within five minutes, and that she arrive at ANMC within thirty minutes, compel the conclusion that she was "engaged to wait," and not "waiting to be engaged." *Skidmore*, 323 U.S. at 137, 65 S.Ct. 161. According to Ms. Huskey, this conclusion is reinforced by her assertion that personal conscience and professional commitment caused her to exceed official ANMC on-call requirements and to respond to calls immediately.

The government responds that, far from restricting Ms. Huskey to a particular location, ANMC's on-call requirements, coupled with the availability of a beeper and cell phone, allowed her to move freely almost anywhere in the Anchorage metropolitan area and to spend time for her personal activities. Under these circumstances, the government argues, the Agency was not required to give Ms. Huskey premium pay for the time she spent on-call but not working.

## II.

Ms. Huskey's claim for premium pay during on-call periods is grounded in the FEPA provision that states that

> an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty . . . .

5 U.S.C. § 5545(c)(1).

The regulations promulgated by the Office of Personnel Management to implement the statute provide that, in order to trigger an entitlement to premium pay under FEPA, the requirement "to remain at, or within the confines of, [the employee's] station" must, *inter alia,* "be definite and the employee must be officially ordered to remain at his station. The employee's remaining at his station must not be merely voluntary, desirable, or a result of geographic isolation, or solely because the employee lives on the grounds." 5 C.F.R. § 550.143(a) (2001). The regulation further provides that the statutory phrase "at, or within the confines of his station," may mean

> [i]n an employee's living quarters, when designated by the agency as his duty station and when his whereabouts is [sic] narrowly limited and his activities are substantially restricted. This condition exists only during periods when an employee is required to remain at his living quarters and is required to hold himself in a state of readiness to answer calls for his services. This limitation on an employee's whereabouts and activities is distinguished from the limitation placed on an employee who is subject to call outside his tour of duty but may leave his quarters provided he arranges for someone else to respond to calls or leaves a telephone number by which he can be reached should his services be required.

5 C.F.R. § 550.143(b)(3).

Our court has not had occasion to consider the FEPA provisions and regulations

relating to employees' entitlement to premium pay for time spent on-call but not working. However, the question of compensability of on-call time generally has been considered by our sister circuits and the Court of Claims, one of our predecessor courts, usually in the context of an employee's claims for compensation under the FLSA.[3] Courts frequently have framed the inquiry as whether an employee is "engaged to wait" (and thus entitled to compensation) or "waiting to be engaged" (and thus not entitled to compensation). *Skidmore*, 323 U.S. at 137, 65 S.Ct. 161. Generally, courts have considered the issue using an ad hoc, case-by-case approach to determine the severity of the restrictions on an employee, *see Bright*, 934 F.2d at 677–80, or they have used a multi-factor test such as the one propounded by the Ninth Circuit in *Owens*, which is what the district court did here. *See Pabst*, 228 F.3d at 1132 (setting forth various factors relevant to the compensability of on-call time). These approaches may provide a useful framework for assessing claims for on-call time compensation, especially in circumstances where the relevant statute or regulations provide minimal guidance. *See id.* at 1132 n. 1 (commenting that the FLSA does not address the issue of on-call time, and the regulations promulgated pursuant to the act are "unhelpful," since they "fail to anticipate a scenario, like that in the present case, in which an on-call employee is able to perform his or her duties from a location away from the employer's premises.").

We find these ad hoc and multi-factor test approaches unnecessary to resolve the present appeal, however. Section 5545(c)(1) provides that an agency must give an employee premium pay under FEPA for on-call time when the employee is "in a position requiring him regularly to remain at, or within the confines of, his station." It is undisputed that ANMC issued no order requiring Ms. Huskey to remain at a particular station. Instead, Ms. Huskey argues that on account of the requirements of responding to calls within five minutes and arriving at the hospital within thirty minutes, ANMC constructively required her to remain within the confines of her home, which she alleges constituted her "station" while on call.

The regulations set forth above (whose validity and applicability are not challenged by Ms. Huskey), however, expressly contemplate and reject the proposition that an employee in Ms. Huskey's position must receive premium pay under FEPA. Specifically, the regulations provide that an employee's living quarters may constitute a "station" for purposes of satisfying the statutory mandate that an employee be required to remain "at, or within the confines of, his duty station," 5 U.S.C. § 5545(c)(1), but only "when [the employee's living quarters are] designated by the agency as his duty station and when his whereabouts is [sic] narrowly limited and his activities are substantially restricted." 5 C.F.R. § 550.143(b)(3). ANMC never designated—explicitly or constructively—

**3.** *See, e.g., Cross v. Arkansas Forestry Commn.*, 938 F.2d 912 (8th Cir.1991) (permitting overtime compensation under the FLSA); *Bright v. Houston Northwest Med. Ctr. Survivor, Inc.* 934 F.2d 671 (5th Cir.1991) (en banc) (denying compensation as a matter of law under the FLSA); *Birdwell v. City of Gadsden, Alabama*, 970 F.2d 802 (11th Cir.1992) (denying compensation for on-call time under the FLSA); *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir.2000) (permitting compensation for on-call time under the FLSA); *Owens*, 971 F.2d at 351 (denying compensation for overtime as a matter of law under the FLSA); *Aldridge v. United States*, 202 Ct.Cl. 365, 479 F.2d 1365, 1367–69 (1973) (denying compensation under prior version of FEPA).

Ms. Huskey's living quarters, or home, as her duty station. On the contrary, it provided her with a beeper to enable her free movement during on-call periods within a geographic range that would permit her to arrive at the hospital within thirty minutes of receiving a page. As the district court pointed out, the time limits for responding to calls and arriving at the hospital had the effect of allowing Ms. Huskey to move about within the Anchorage Bowl, which belies the notion that ANMC designated Ms. Huskey's home as her duty station.[4]

Moreover, the regulation distinguishes the situation in which an employee's living quarters constitute a duty station, so that premium pay may be required under FEPA, from the situation in which "an employee who is subject to call outside his tour of duty ... may leave his quarters provided he ... leaves a telephone number by which he can be reached should his services be required." 5 C.F.R. § 550.143(b). In other words, the regulation provides that the living quarters of an employee such as Ms. Huskey may not constitute a "duty station" for purposes of satisfying the statute's premium pay requirements when the employee may move freely and be reachable by a beeper or cellular telephone. The regulation, therefore, speaks directly to the question before us: whether Ms. Huskey's on-call protocol, in which her whereabouts and activities were circumscribed only by the requirement to respond to calls or pages within five minutes and the requirement to report

to the hospital within thirty minutes, entitled her to premium pay under FEPA. Because ANMC did not "designate" her living quarters as her duty station and because she was able to leave her living quarters provided she left "a telephone number by which [s]he can be reached should [her] services be required," the regulations promulgated pursuant to FEPA conclusively demonstrate that Ms. Huskey was not required "to remain at, or within the confines of" her duty station. 5 U.S.C. § 5545(c)(1). Ms. Huskey therefore fails to satisfy the statutory prerequisite for entitlement to premium pay under FEPA, and the district court properly—albeit on a different basis—dismissed her claim. See *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed. Cir.1983) ("We sit to review judgments, not opinions.").

■ As noted above, Ms. Huskey asserts that her conscience and professional commitment caused her to return immediately to the hospital upon receiving a call, irrespective of the actual time limits imposed by ANMC. According to Ms. Huskey, this fact further limited her activities during on-call periods and justifies compensation under FEPA. We disagree. Ms. Huskey's devotion to her job and the patients served at ANMC, while salutary and commendable, does not translate into entitlement to premium pay. Instead, as the statute makes clear, the compensability of on-call time depends on the employee being "in a position requiring him regularly

---

4. Because ANMC did not designate Ms. Huskey's home as her duty station, we need not consider whether her whereabouts were "narrowly limited and [her] activities [were] substantially restricted." In any event, the district court found, in the context of applying the seven-factor *Owens* test, that the restrictions on Ms. Huskey's whereabouts and activ-

ities were not sufficient to warrant FEPA premium pay for her on-call periods. Mindful of the distinction between limitations that may render a job "highly undesirable" and those that require compensation for on-call time, see *Bright*, 934 F.2d at 678, we see no reason to quarrel with the district court's findings.

to remain at, or within the confines of, his station." 5 U.S.C. § 5545(c)(1) (emphasis added). The statute does not permit an employee to trigger an agency's duty to compensate by remaining at a work station voluntarily. Therefore, to the extent that Ms. Huskey imposed restrictions on her travel and activities beyond those necessitated by ANMC's on-call policy, her conduct is irrelevant to the question of whether she is entitled to premium pay under FEPA for time spent on-call but not working.

## CONCLUSION

For the foregoing reasons, the decision of the United States District Court for the District of Alaska granting summary judgment in favor of the government and dismissing Ms. Huskey's complaint is

*AFFIRMED.*