Walter ALLEN, et al.

v.

The UNITED STATES.

No. 47–82C.

United States Claims Court.

Jan. 3, 1983.

Michael E. Marr, Baltimore, Md., for plaintiffs.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Kenneth C. Holecko, U.S. Marshals Service, Dept. of Justice, McLean, Va., of counsel.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### OPINION

HARKINS, Judge.

These claims come for decision on defendant's motion for summary judgment.[1] Although no response to defendant's motion for summary judgment has been filed, plaintiffs assert that the prior record of this

---

1. Plaintiffs' claims, filed in the United States District Court for the District of Maryland on Oct. 9, 1981, were transferred to the United States Court of Claims on Dec. 24, 1981, pursuant to 28 U.S.C. § 1406(c). Plaintiffs' amended petition was filed on Apr. 23, 1982, and defendant's motion for summary judgment was filed on Sept. 7, 1982. The case was transferred to the United States Claims Court on Oct. 1, 1982,

by the Federal Courts Improvement Act of 1982 (Pub.L. No. 97–164) § 403(d) (28 U.S.C. § 171 note). On plaintiffs' failure to respond to defendant's motion for summary judgment, on Nov. 22, 1982, an order was entered directing plaintiffs to file a statement that set forth any reason why the case should not be dismissed for failure to prosecute. Plaintiffs filed a response to that order on Dec. 6, 1982.

case contains verification of the essential facts and sufficient response to defendant's motion. Plaintiffs request a decision on the merits. Plaintiffs also request hearing on defendant's motion and on their response to the November 22, 1982, order. Plaintiffs' contention that the record is adequate for a decision on the merits of defendant's motion for summary judgment is persuasive; a hearing, however, is not required.

Plaintiffs are, or were, 26 Deputy United States Marshals for the District of Maryland who claim entitlement to premium pay for time spent on duty officer assignments during the period May 1976 to February 1982. For reasons that follow defendant prevails and plaintiffs' complaint is to be dismissed.

■ The facts necessary for decision are not in dispute. Plaintiffs are non-supervisory Deputy Marshals in the United States Marshals Service, employed in the office for the District of Maryland. The basic non-overtime tour of duty in the District of Maryland is 8:30 a.m. to 5:00 p.m., Monday through Friday. Deputy Marshals in the Maryland District are called upon to perform law enforcement duties which require work at night, on weekends and after their regular non-overtime hours. Such work may include transporting sick and injured prisoners from jails and medical facilities, protection of witnesses who have cooperated with federal prosecutors, emergency protection of federal judges and their families, and service of process, such as warrants of arrest on vessels. In the normal course, performance of night and weekend duties arises from unanticipated telephone calls for assistance made by local jail personnel, witnesses, and judges.

In May 1976, the District of Maryland initiated an assignment system by which Deputy Marshals are designated as "duty officers." Assignments are made by means of a Duty Officer Roster, two Deputy Marshals are designated on a rotating basis each week for 1-week tours, one is designated "primary" duty officer and the other is designated the "back-up." The function of the primary duty officer is to receive calls

for assistance referred by a commercial telephone answering service and to respond as needed to such calls. The back-up duty officer's function is to assist the primary duty officer, if two deputies are needed to respond to a call. From the start of the program, the primary duty officer has been provided with a radio receiver (a beeper) and a Government vehicle; after 1980, back-up duty officers also have been provided a radio receiver. The beeper's range is approximately 35 miles from Baltimore and Washington, D.C.

Requests for assistance are referred to the primary officer by telephone by an answering service. If the primary duty officer is unavailable by telephone, the answering service activates the beeper. From 1976 to 1980, the back-up duty officer was responsible for providing the primary duty officer with a telephone number where he could be reached. Since 1980, the back-up duty officer can be signaled to answer a call when he is at a location without telephone service.

After their basic tour of duty, duty officers are not required to remain at headquarters, or at their residences. Both the primary duty officer and the back-up duty officer, after 1980, may engage in their own pursuits during non-duty hours as long as they remain sober and restrict travel to the beeper's range. The back-up duty officer is required to remain within a radius of Baltimore that enables him to respond to requests for assistance from the primary duty officer.

During the week they are listed on the Duty Officer Roster, duty officers are responsible for the beepers and for promptly reporting malfunctions of beepers. The primary duty officer is responsible for accepting calls made to the Marshals Office during off-duty hours, and for maintaining a log of those calls. In the event a call requires a response, the duty officers are responsible to perform any necessary duties involved.

Duty officers are credited with 15 minutes overtime for each call logged, and are paid at overtime rates under 5 U.S.C.

§ 5542(a) for each hour worked after the basic tour in response to a telephone call. Duty officers are credited with a minimum of two hours "call-back" overtime under 5 U.S.C. § 5542(b) for any work which requires them to leave their residence. If no telephone calls were logged from the end of the duty officer's regularly scheduled basic tour on one day to the beginning of his regularly scheduled basic tour on the next day, no premium compensation is paid for such "on-call" time.

Plaintiffs allege that the responsibilities of Deputy Marshals posted on the Duty Officer Roster constitute "standby" duty for which they are entitled to premium compensation pursuant to the Federal Employees Pay Act,[2] the Fair Labor Standards Act,[3] and 5 C.F.R. 551.431(a), the regulation promulgated by the Office of Personnel Management (OPM) to implement the Fair Labor Standards Act. The issue under both of the statutes and the OPM regulation is whether the time spent by the Deputy Marshals as duty officers which was not compensated is time spent predominantly for their own benefit or predominantly for the benefit of the Maryland District Marshals Office.[4]

During the times plaintiffs are "on-call" as duty officers, after their basic duty hours, they are not restricted to the headquarters offices nor to their residences. They are free to follow their individual private pursuits, subject only to the requirements to remain sober, to remain within the beepers range, and to maintain a log of referred calls. If response to any referred call requires the Deputy Marshal duty officer to do any work, such work is compensated at premium rates. The vast majority of time that is not compensated has been available for the Deputy Marshal's own private use. The Deputy Marshal's activities during this time could not properly be classified as work for the benefit of the Marshals Service. On the facts of this case the duty officer's uncompensated time is not time during which the Marshals Service has engaged him or her to wait.

■ The Fair Labor Standards Act applies to activities of federal employees that constitute work for the benefit of an agency and under the control or direction of an agency. OPM's regulations reflect this purpose in the provisions applicable to time spent on standby duty or on-call status. For standby duty to be considered as work, the regulation requires, if the employee is not restricted to the agency's premises, that the employee must be restricted to his or her living quarters or designated post of duty, must have his or her activities substantially limited, and must be required to remain in a state of readiness to perform work. Time spent on an on-call status is not considered work when an employee is allowed to leave a telephone number or to carry an electronic device for the purpose of being contacted, even though the employee is required to remain within a reasonable call-back radius.[5] OPM's regulation in 5

---

**2.** 5 U.S.C. §§ 5542(a) and 5545(c)(1) (1976).

**3.** 29 U.S.C. §§ 207(a) and (k) (1976).

**4.** *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Rapp v. United States,* 167 Ct.Cl. 852, 340 F.2d 635 (1964).

**5.** 5 C.F.R. 551.431 provides:

"Time spent on standby duty or in an on-call status.

"(a) An employee will be considered on duty and time spent on standby duty shall be considered hours of work if:

"(1) The employee is restricted to an agency's premises, or so close thereto that the employee cannot use the time effectively for his or her own purposes; or

"(2) The employee, although not restricted to the agency's premises:

"(i) Is restricted to his or her living quarters or designated post of duty;

"(ii) Has his or her activities substantially limited; and

"(iii) Is required to remain in a state of readiness to perform work.

"(b) An Employee will be considered off duty and time spent in an on-call status shall not be considered hours of work if:

"(1) The employee is allowed to leave a telephone number or to carry an electronic device for the purpose of being contacted, even though the employee is required to remain within a reasonable call-back radius; or

C.F.R. 551.431 is an accurate reflection of the concepts of standby duty and on-call status as developed in judicial decisions.[6]

The Federal Employees Pay Act has been considered in numerous decisions by the United States Court of Claims. It is well settled that claims for standby duty performed at home are not compensable. Such duty, to qualify as work normally must be performed at the claimant's office or station, and, even if exclusively at the place of employment, standby is not entirely compensable. Eating and sleeping time, periods when no work in fact is done, is excluded from computation for compensable hours.[7]

Plaintiffs have failed to state a claim for premium compensation on an annual basis for remaining in a standby status as provided in 5 U.S.C. § 5545(c)(1). Plaintiffs have not pleaded a regulation promulgated by the Marshals Service and approved by the Office of Personnel Management or its predecessor, the Civil Service Commission, that provides this type of compensation. Such a regulation is a prerequisite under the Federal Employees Pay Act. Nor have plaintiffs pleaded that the failure of the Marshals Service to so provide is arbitrary or capricious.

For standby time to be compensable under 5 U.S.C. § 5545(c)(1), the employee must be in a position requiring him "to remain at, or within the confines of, his station." Plaintiffs have not alleged that their homes were designated as their duty stations. The implementing regulation provides that the words "at, or within the confines of, his station" may mean an employee's living quarters when designated by the agency as his duty station, and when his whereabouts are narrowly limited and his activities are substantially restricted. This limitation is distinguished from the situation where the employee may leave his quarters provided arrangements are made for someone else to respond to calls or when he leaves a telephone number at which he can be reached.[8]

## CONCLUSION

Defendant's motion for summary judgment is allowed and the complaint is to be dismissed.

"(2) The employee is allowed to make arrangements such that any work which may arise during the on-call period will be performed by another person."

**6.** *Armour & Co. v. Wantock, supra* note 4; *Skidmore v. Swift & Co., supra* note 4; *Rapp v. United States, supra* note 4; *Moss v. United States,* 173 Ct.Cl. 1169, 353 F.2d 746 (1965); *Brennan v. Williams Investment Co.,* 390 F.Supp. 981 (W.D.Tenn.1975); *Pilkenton v. Appalachian Regional Hospital, Inc.,* 336 F.Supp. 334 (W.D.Va.1971).

**7.** *Bowser v. United States,* 215 Ct.Cl. 168, 174, (1977); *Aldridge v. United States,* 202 Ct.Cl. 365, 479 F.2d 1365 (1973); *Rapp v. United States, supra* note 4; *Moss v. United States, supra* note 6.

**8.** 5 C.F.R. 550.013(b) provides:

"(b) The words 'at, or within the confines of, his station', in § 550.141 mean one of the following:

\* \* \* \* \* \*

(3) In an employee's living quarters, when designated by the agency as his duty station and when his whereabouts is narrowly limited and his activities are substantially restricted. This condition exists only during periods when an employee is required to remain at his quarters and is required to hold himself in a state of readiness to answer calls for his services. This limitation on an employee's whereabouts and activities is distinguished from the limitation placed on an employee who is subject to call outside his tour of duty but may leave his quarters provided he arranges for someone else to respond to calls or leaves a telephone number by which he can be reached should his services be required."