**Roy McINTYRE, Plaintiff,**

v.

**DIVISION OF YOUTH REHABILITATION SERVICES, DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, STATE OF DELAWARE, Defendant.**

**Civ. A. No. 91–125–JLL.**

United States District Court, D. Delaware.

July 13, 1992.

---

**3.** This case is currently on appeal to the Second Circuit.

Jeffrey M. Weiner of Weiner & Weir, Wilmington, Del., for plaintiff.

W. Michael Tupman of the Delaware Dept. of Justice, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

The plaintiff has brought this suit to recover unpaid on-call duty pay as wages, liquidated damages, attorney's fees, and costs under the Fair Labor Standards Act of 1938, as amended, 29 *U.S.C.* §§ 201–219 ("FLSA"). (Docket Item ["D.I."] 54 at Exhibit ["Ex."] A, ¶ 3.) The State of Delaware ("State") filed a motion pursuant to Rules 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure to dismiss part of the complaint for failure to state a claim and for summary judgment against the plaintiff on the remainder of the complaint. (D.I. 44.)

## I. FACTS

The Delaware Department of Correction hired Roy McIntyre ("McIntyre") on or about June 26, 1978, to serve as a Juvenile Field Investigator. (D.I. 54 at Ex. A, ¶ 6.) On July 1, 1982, the State Personnel Office ("SPO") reclassified the plaintiff's position to an Internal Affairs Officer. (D.I. 52 at 3; D.I. 54 at Ex. B.) On July 1, 1984, the position of Internal Affairs Officer was transferred from the Delaware Department of Correction to the Division of Youth Rehabilitation Services ("Division") of the Delaware Department of Services for Children, Youth and Their Families ("Department"). (D.I. 54 at Ex. A, ¶ 8; *id.* at Ex. D, ¶ 8.) His primary responsibility has been the background investigation of prospective employees. Sometimes McIntyre

also must retrieve juveniles AWOL from court-ordered placement, make arrests, and investigate alleged criminal behavior by staff or residents of the Division's programs. (D.I. 47 at ¶ 3.)

The Division informed McIntyre that, in addition to his normal work week, he would be required to be "on call," meaning that he should be ready to respond to a call at any time of the day or week. (D.I. 54 at Ex. EE, ¶¶ 2–3.) Unhappy with this responsibility, McIntyre sought pay for his on-call status. Director Cox told the plaintiff that an ongoing comprehensive review would consider the possibility of pay for on-call duty. (*Id.* at Ex. EE, ¶ 9.) On July 2, 1986, Director Cox sent a memorandum to the SPO requesting hazard pay and compensation for the plaintiff's on-call duties. (*Id.* at Ex. E.) Director Cox then attempted to have his position reclassified and interpreted his job dimensions for the purpose of reviewing his job classification. (*Id.* at Exs. H & EE, ¶ 12.) His request for reclassification was denied. (*Id.* at Exs. I & EE, ¶ 13.) McIntyre appealed, but the SPO refused to regrade or reclassify his position. (*Id.* at Exs. J, K, & EE, ¶¶ 14–15.)

When it became clear that the State would not give additional pay, McIntyre sought removal from on-call duties. In response to the plaintiff's requested removal from on-call duty on August 29, 1989, (*id.* at Exs. L & EE, ¶ 17), Director Cox again requested some type of compensation for the plaintiff's on-call status. (*Id.* at Exs. M & EE, ¶ 18.) By memorandum, McIntyre made a second request on November 13, 1989. (*Id.* at Exs. N & EE, ¶ 19.) Charles Hayward, Secretary of the Department, requested that the SPO review McIntyre's classification. Although this memorandum demonstrated an understanding that his classification was exempt from the FLSA and afforded him no compensation for his on-call status, Hayward appealed to the SPO on the basis of the nature of the plaintiff's duties and the difficulty of awarding compensation time. (*Id.* at Ex. O.) In a memorandum dated March 22,

1990, the new Director of the Division, Director McCarthy, told the plaintiff that the SPO had denied his request for stand-by duty pay because "[t]he [SPO] has confirmed that the designation of your position as exempt from the [FLSA] is appropriate." (*Id.* at Ex. P; D.I. 47 at ¶ 6.) Although the SPO denied any pay for standby duty, it granted McIntyre the option of compensation in cash or compensatory time for any overtime work actually performed. (D.I. 47 at ¶ 6.)

According to Director McCarthy, McIntyre had told him that "Mr. Cox relieved him of on-call responsibilities just prior to his leaving";[1] Director McCarthy wrote to program directors at Ferris School to inform them that "Mr. McIntyre should not be considered on-call on a regular basis." (D.I. 54 at Ex. Q.) McIntyre marked in his diary records for November 30, 1989: "24 hour on call status temp. lifted by D. Cox this p.m." (D.I. 49 at Ex. 23.) According to a contemporaneous memorandum written by Director McCarthy, "Mr. McIntyre ha[d] agreed to be available for consultation by phone if a situation arises which requires an after-hours response. However, the decision as to whether Mr. McIntyre will respond in person shall be Mr. McIntyre's alone." (D.I. 54 at Ex. Q.)

On June 14, 1990, Secretary Hayward submitted a proposal for providing some added compensation "in an equitable fashion" for "FLSA exempt employees required to provide stand-by services." (D.I. 49 at Ex. 10.) Under the proposal, one hour of compensation would be provided for every eight hours spent on standby service on weekends and weekdays and for every four hours spent on standby during holidays. (*Id.*) On June 29, 1990, SPO Director Fallis responded. He stated the SPO's position that the law requires no additional pay because the employees at issue are professionals and therefore exempt from the FLSA and because employees carrying beepers, who are free to pursue their own interests on their own time, are not entitled

---

**1.** Mr. McCarthy became acting Director of the Division in January 1990 after Mr. Cox had left the Division. (D.I. 47 at ¶ 5.)

to compensation for that time under the FLSA. (D.I. 54 at Ex. S.) He rejected Hayward's proposal as unnecessary, stating that the requirement that these employees be available is part of their overall duties. (*Id.*) Despite the SPO Director's memo stating that Department employees required to wear beepers need not and should not be compensated, McIntyre "question[ed] whether he is in fact required to wear a beeper and to return to duty upon contact" on the grounds that it was not listed in his existing job specifications.[2] (*Id.* at Ex. T.) In light of this conflict, Director McCarthy wished to "bring this to a final resolution" and asked whether McIntyre could be required to wear a beeper. (*Id.*) Once again, Personnel Officer Carol Martin stated the SPO position that McIntyre's classification was exempt as a professional position. (*Id.* at Ex. U.) On October 23, 1990, Director McCarthy informed McIntyre that he would be required to wear a pager and respond to calls after-hours and would receive cash or compensatory time only if actually paged and required to respond. (*Id.* at Ex. V.)

The Division has never paid or agreed to pay McIntyre for on-call standby. McIntyre earned compensation time for any overtime work actually performed, and, since March 1990, he has had the option to be paid cash for such work at straight

time. (D.I. 46 at ¶ 7.) On July 1, 1991, the SPO regraded McIntyre's position to a lower level under the State's graded compensation system, at which time he became entitled to compensation for overtime worked at time and one-half pay. (D.I. 46 at ¶ 8; D.I. 49 at Ex. 5.) When called back, the Division required the plaintiff to have his security equipment and his State vehicle, which is equipped with a security cage. (D.I. 54 at Ex. EE, ¶ 4.) Because the Division restricted the use of the State vehicle to travelling to and from work, McIntyre states that he was limited in the distance he could travel from his home to visit friends or family. (*Id.* at Ex. EE, ¶¶ 4–5.) McIntyre also complains that his on-call status prevented him from drinking alcoholic beverages until recently and forced him to decline secondary part-time employment with two limousine companies and an armored car company, each of which would have required him to leave the area. (*Id.* at Ex. EE ¶¶ 6–7.)

Aside from these restrictions, McIntyre has been free to go about his own personal business as he pleases. His callbacks requiring him to report to work during this period have been infrequent. The only evidence submitted regarding the number of such callbacks indicates that there were only a handful of callbacks each year.[3]

---

2. The State took the position at the time, and presumably still does, that this responsibility is based on its operational needs in the Internal Affairs area, as described within the Principal Accountabilities section of the job description. (D.I. 54 at Ex. U.)

3. The Division asked the plaintiff to "[i]dentify by date and time, every instance in the years 1989, 1990 and 1991 in which you were off-duty (after the close of a weekday workday, on a weekend, or holiday, or during vacation or while on sick leave) and received notice, by telephone, beeper, or otherwise, to return to work to perform one of your job functions as an Internal Affairs Officer or Internal Affairs Investigator." (D.I. 51 at Ex. 36.) In response, McIntyre stated that "[t]he answer to this interrogatory may be derived or ascertained from Plaintiff's calendars which have been produced heretofore in this case." (*Id.* at Ex. 37.) An examination of McIntyre's calendars yields the following: two in 1989, three in 1990 and one in 1991. (*See* D.I. 45, ¶¶ 5 & 13; D.I. 49, 50, & 51 at Exs. 23–25; D.I. 57 at ¶ 6.) Later, McIntyre

went through his own logs in response to the question. (D.I. 57 at Ex. 38.) McIntyre sent the Division a document that appears to include the following instances of overtime: 23 in 1989, 25 in 1990, and 5 in 1991. This list appears to include more than callbacks during the plaintiff's personal time that required a return to his employer. Some of the entries extend from regular working hours that were not days taken for sickness or vacation, and others note calls that did not require a physical response. (*Id.*) A few of the entries note callbacks at his home that did require a response, and these notes are consistent with the figures first cited. Even where this evidence in construed in the plaintiff's favor, the number of callbacks can be characterized as very infrequent. Division personnel have corroborated the infrequency of callbacks by affidavit. "Since becoming acting Director in January 1990, [Dr. McCarthy] can recall only two instances in which McIntyre was in fact called back to the Division for overtime work." (D.I. 47 at ¶ 16.) McIntyre has stated that there may be other callbacks that are unmarked and forgotten, but he has failed to enter

(D.I. 45, ¶¶ 5 & 13; D.I. 57 at ¶ 6 & Ex. 39.) McIntyre states that he also "receive[s] calls throughout the week, most of which do not necessitate an actual physical response on [his] part." (D.I. 53 at ¶ 16.)

Since the Division has restored the plaintiff's on-call status, the burden of the on-call duty on McIntyre has decreased in certain respects. The Division has replaced the previous on-call system with a beeper. With the beeper, McIntyre can remain within approximately thirty miles of his workplace.[4] In addition, McIntyre can request temporary relief from his on-call duties for social reasons or for vacation, by making a written request in advance. (D.I. 47 at ¶ 13.) The Division has also developed a plan of support involving the State Police in case McIntyre is unavailable. (*Id.*) In 1991, the Division granted eleven requests by McIntyre to be temporarily relieved of on-call status under this system. (*Id.* at ¶ 15; *see also* D.I. 49 at Exs. 17–22.)

## II. PROCEDURAL STANDARDS

■ The Division has moved to dismiss part of the complaint and for summary judgment as a matter of law on the remainder of the complaint. (D.I. 44.) The standard for deciding a motion to dismiss is whether, taking all factual allegations as true, it is beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 412 (D.Del.1987) (citing *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943 (3d Cir.1984)). The facts alleged in the proposed amended complaint, and all reasonable factual inferences drawn from those facts, are construed in the plaintiff's favor. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. at 412. The issue involved in a motion to dismiss is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," which it believes to demonstrate the absence of a genuine issue of material fact. Where, as here, the nonmoving party opposing summary judgment has the burden of proof at trial on the issue for which summary judgment is sought, he must then make a showing sufficient to establish the existence of an element essential to his case. If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). Moreover, the mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough

---

any evidence with regard to these. "A party who resists summary judgment cannot hold back his evidence until the time of trial." *Frankford Hospital v. Blue Cross*, 417 F.Supp. 1104, 1110 (E.D.Pa.1976), *aff'd*, 554 F.2d 1253 (3d Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977). The Court must judge the merits of the case on the evidence before it.

**4.** McIntyre stated that the range is "at best Smyrna to the South and Philadelphia to the

North." (D.I. 54 at Ex. EE, ¶ 5.) The Court takes judicial notice pursuant to Federal Rule of Evidence 201(b)(2) that the approximate distance between Wilmington and Smyrna is thirty-four miles and the approximate distance between Wilmington and Philadelphia is thirty-one miles. Delaware Department of Transportation, *The Official State Highway Map of Delaware*, No. 55–04/84/11/01 (mileage chart approximations).

evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### III. THE STATUTE OF LIMITATIONS

■ McIntyre filed this action on March 19, 1991, seeking on-call duty pay dating back to February 19, 1985. (D.I. 54 at Ex. A.) The statute under which McIntyre claims compensation provides a two-year statute of limitations, stating that "every action shall be forever barred unless commenced within two years after the cause of action accrued." 29 *U.S.C. § 255(a)*. A statute of limitations is an affirmative defense properly raised on a motion to dismiss pursuant to Rule 12(b)(6). *See Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360 (D.C.Cir.1982). McIntyre has contended that the statute of limitations does not bar any part of his claim because he alleges a continuous violation.

■ The courts have adopted a uniform approach on this issue. Under the FLSA "a separate cause of action accrued each payday when the [employer] excluded the overtime compensation they claim.... Therefore, the statute bars their recovery of any overtime compensation due them prior to [two years before the time the petition is filed.]" *Beebe v. United States*, 640 F.2d 1283, 1293 (Ct.Cl.1981). *Accord Angulo v. The Levy Co.*, 568 F.Supp. 1209, 1215 (N.D.Ill.1983), *aff'd sub. nom. Flores v. Levy Co.*, 757 F.2d 806 (7th Cir.1985); *Wessling v. Carroll Gas Co.*, 266 F.Supp. 795, 801 (N.D.Iowa 1967); *Brown v. Bouchard*, 209 F.Supp. 130, 131 (D.Mass.1962); *Doyle v. United States*, 20 Cl.Ct. 495, 502–03 (1990), *aff'd*, 931 F.2d 1546 (Fed.Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 866, 116 L.Ed.2d 772 (1992). The "continuing claim" doctrine treats each claim for money alleged to be improperly withheld from the employee's paycheck in the same manner that any other claim would be

treated under the statute of limitations.[5] Accordingly, the Court finds that the plaintiff has failed to state a claim under which relief can be granted for any failure to pay overtime compensation prior to the limitations period that preceded the filing of the complaint in this action.

■ The statutory scheme presumes a two-year statute of limitations but provides for a longer, three-year period if the defendant's violation of the FLSA has been "willful." 29 *U.S.C. § 255(a)*. In *McLaughlin v. Richland Shoe Co.* the Supreme Court held the term "willful" to mean "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). The plaintiff has the burden of proof on this issue. *Id.* at 135, 108 S.Ct. 1682–83; *Wyland v. District of Columbia*, 728 F.Supp. 35, 37 (D.D.C.1990); *EEOC v. Grady*, 857 F.2d 383, 388 (7th Cir.1988). In order to survive a motion for summary judgment, the plaintiff must "make a competent demonstration that there was any trialworthy issue as to whether [the employer] 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1515–16 (1st Cir.1991) (quoting *McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 1681).

■ The Division repeatedly rejected McIntyre's claims that he was entitled to pay for time spent on-call. These rejections merely reflect the fact that the Division never considered McIntyre legally entitled to any form of compensation. According to numerous memoranda written over a period extending back over many years, the defendant believed McIntyre to be exempt from the FLSA because of the allegedly

---

5. As has been noted, the continuing claim doctrine has been referred to as an exception under a superficial consideration of the statute's wording, but on close examination the doctrine is not an exception at all. *See Hart v. United States*, 17 Cl.Ct. 481, 483 n. 6 (1989), *rev'd on other grounds*, 910 F.2d 815 (Fed.Cir.1990); *Feldman v. United States*, 149 Ct.Cl. 22, 181 F.Supp. 393, 399–400 (1960).

professional nature of his position.[6] (*See, e.g.,* D.I. 49 at Ex. 11; D.I. 54 at Ex. U.) The Division had also determined that it had no obligation to pay for this type of work in any case because of the freedom with which McIntyre could pursue his own personal activities while on-call. (D.I. 49 at Ex. 11.) Even those within the Department who argued for a better compensation package or a different arrangement apparently did so on "equitable" or policy reasons and not on legal grounds. (*See, e.g., id.* at Ex. 10; D.I. 54 at Ex. U.) The Division made efforts to consider McIntyre's individual case, including the consideration of Department of Labor letter rulings, and reached the same conclusions. (*See* D.I. 54 at Ex. U; D.I. 56 at ¶ 7.) The plaintiff complains that the Division failed to consult with the Department of Labor regarding McIntyre's case. It would be a great imposition upon both the Department of Labor and employers to require such individual consultation to be the proper course of action in these types of cases. More importantly, the Supreme Court specifically rejected a standard for "willfulness" based on whether reasonable steps were taken to ensure that one's compliance with the FLSA is adequate under the law. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 134–35, 108 S.Ct. 1677, 1682–83, 100 L.Ed.2d 115 (1988). The Court therefore concludes that the plaintiff has failed to allege a triable issue with regard to the defendant's "willfulness" that would extend the limitations period to three years. Accordingly, the Court will enter summary judgment dismissing all claims accruing prior to March 13, 1989, two years prior to the filing of the complaint.

## IV. THE SUFFICIENCY OF THE CLAIM FOR ON–CALL DUTY PAY

Although the Supreme Court has described this question as "dependent upon all the circumstances of the case," *Armour*

& *Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), summary judgment is appropriate where the material facts are not subject to dispute. *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 934 F.2d 671, 674–75 (5th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992); *Clay v. City of Winona,* 753 F.Supp. 624, 628 (N.D.Miss.1990). In this case the undisputed facts are sufficient to make a legal determination.[7] The differences between the parties are not material to the action, and, consistent with the standard for the consideration of a summary judgment motion, the Court will consider any reasonable implication from the evidence submitted in the light most favorable to the plaintiff.

The substance of the case is the extent of FLSA coverage for time spent on-call. The FLSA provides as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 *U.S.C. §* 207(a)(1). The statute defines "employ" as "includ[ing] to suffer or permit to work." *Id. §* 203(g). In applying this statute to on-call responsibilities, the Supreme Court held that waiting time could constitute work or employment under the statute in two decisions handed down on the same day. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Armour,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118. The Supreme Court declared that the question is "dependent upon all the circumstances of the case" and characterized the determination as "[w]hether time is spent predominantly for the employer's benefit or for the employee's." *Arm-*

---

6. The FLSA does not apply to any person "employed in a bona fide executive, administrative, or professional capacity." 29 *U.S.C. §* 213(a)(1).

7. In contrast, the court in *Berry v. County of Sonoma* found that there were disputed materi-

al facts. 763 F.Supp. 1055, 1060 (N.D.Cal.1991). For instance, "[t]he [c]ourt view[ed] the frequency of call-backs as unresolved." *Id.* at 1060 n. 13.

*our*, 323 U.S. at 133, 65 S.Ct. at 168. Similarly, the Supreme Court stated the "[f]acts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Skidmore*, 323 U.S. at 137, 65 S.Ct. at 163.

▮▮▮ Although not binding on this Court, regulations and letter rulings issued by the Department of Labor constitute proper guidance in this matter. *Id.* at 140, 65 S.Ct. 164. Two regulations are particularly helpful in addressing the case of on-call work. Regulations attempting to define compensable hours of work provide as follows:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 *C.F.R.* § 553.221(d). Another regulation specifically purports to address the question of compensation for on-call time:

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on-call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

*Id.* § 785.17. These regulations clearly indicate that time spent away from the employer's premises or a fixed location while on-call ordinarily does not constitute work under the FLSA.

Other courts have addressed situations that involve situations comparable to this one. In a recent decision, the Fifth Circuit rejected the claim of a biomedical equipment repair technician to on-call compensation. *See, Bright*, 934 F.2d 671. "Bright [, the plaintiff,] did not have to remain on or about his employer's place of business, or some location designated by his employer, but was free to be at his home or at any place or places he chose, without advising his employer, subject only to the restrictions that he be reachable by beeper, not be intoxicated, and be able to arrive at the hospital in 'approximately' twenty minutes." *Id.* at 676. The Fifth Circuit explained that the FLSA "does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call." *Id.* at 677. The "critical issue," the court noted, is "whether the employee can use the [on-call] time effectively for his own purposes." *Id.* (quoting *Hafferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir.1989)). McIntyre's case is not distinguishable. In fact, Bright appears to have had a more onerous responsibility, for the hospital called him back to work four or five times a week, *id.* at 674, and did not appear to give him leave at all from these responsibilities. *Id.* at 679 (Williams, J., dissenting). Like Bright, the restrictions upon McIntyre are not so extensive as to prevent him from using personal time. *See* 29 *C.F.R.* §§ 553.221(d), 785.17. The Court concludes that the plaintiff waited to be engaged rather than engaged to wait, *Skidmore*, 323 U.S. at 136–37, 65 S.Ct. at 162–63, and had use of his time "predominantly for his own benefit." *Armour*, 323 U.S. at 123, 65 S.Ct. at 171.

Other cases support this conclusion. For instance, in *Allen v. United States*, the United States Claims Court held that federal deputy marshals required to wear beepers or leave telephone number where they could be reached off-duty were not entitled to overtime pay for on-call time. 1 Cl.Ct. 649, *aff'd*, 723 F.2d 69 (Fed.Cir.1983). The Claims Court stated that a federal employment regulation governing compensation

for federal civil service employees accurately reflected the FLSA. *Id.* at 651–52. Under this regulation, "[t]ime spent on an on-call status is not considered work when an employee is allowed to leave a telephone number or to carry an electronic device for the purpose of being contacted, even though the employee is required to remain within a reasonable callback radius." *Allen*, 1 Cl.Ct. at 651. *See also* 5 C.F.R. § 551.431. Similarly, in *Clay v. City of Winona,* the court found that firefighters who had constant standby duties and who each received approximately three callbacks a month could not claim compensation for on-call time under the FLSA. 753 F.Supp. 624 (N.D.Miss.1990). The courts have addressed other situations that may have been more or less onerous in some respects,[8] but these cases lend support to the reasoning and the general principle that applies here. *See Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir. 1987) (rejecting gas company employees' claim for on-call compensation); *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir.1988) (truck drivers' on-call time not compensable); *Pilkenton v. Appalachian Regional Hospitals, Inc.,* 336 F.Supp. 334 (W.D.Va.1971) (hospital employees not entitled to compensation for on-call time).

▬ On-call time, as the previously cited authority indicates, may be compensable under certain circumstances. The leading case granting compensation for stand-by duty where the employee need not remain on the employer's premises is *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir. 1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). In *Renfro,* the Tenth Circuit affirmed a decision holding that firefighters receiving three to five callbacks a day were entitled to compensation for the time spent on-call. The Tenth Circuit found "the frequency of callbacks" to distinguish other cases in this area. 948 F.2d at 1537. *See also Renfro v. City of Emporia,* 729 F.Supp. 747, 752 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992) ("The court finds that the frequency with which Emporia firefighters are subject to call-backs readily distinguishes this case from cases which have held that on-call time is non-compensable.") Letter rulings from the Department of Labor support a different approach where callbacks are so frequent as to interfere with normal use of leisure time. 948 F.2d at 1537–38. Where callbacks are not frequent, however that is defined, *Renfro* does not provide a sufficient rationale for granting compensation.[9] *Clay,* 753 F.Supp. at 629 (distinguishing *Renfro* ). No fact regarding the plaintiff's on-call responsibility is sufficient to distin-

---

**8.** In some of these cases, the employees' on-call time had been less pervasive than McIntyre's. *See, e.g., Norton v. Worthen Van Service, Inc.,* 839 F.2d 653, 654 (10th Cir.1988) (employees' on-call shifts were eight to twelve hours); *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369, 370 & n. 2 (5th Cir.1987) (on-call responsibility routinely shared among small work crews); *Pilkenton v. Appalachian Regional Hospitals, Inc.,* 336 F.Supp. 334 (W.D.Va.1971) (plaintiffs routinely alternated on-call shifts). On the other hand, the number of actual times that the employee had been required to return to work sometimes were more frequent than in this case. *See, e.g., Pilkenton,* 336 F.Supp. at 336–67 (several callbacks each week).

**9.** The court in *Armitage v. City of Emporia* suggested that other relevant factors mentioned in *Renfro,* such as the nature of the employment, would be sufficient to grant compensation. 782 F.Supp. 537, 543–44 (D.Kan.1992). The court proceeded to award backpay and other damages to detectives required to be on standby who were called back once or twice a week. *Armitage* explicitly rejected the Fifth Circuit decision in *Bright v. Houston Northwest Medical Ctr., Inc.,* 934 F.2d 671 (5th Cir.1991) (en banc). *Armitage,* 782 F.Supp. at 544. In addition, some of its reasoning cannot be reasonably reconciled with *Clay v. City of Winona,* 753 F.Supp. 624 (N.D.Miss.1990). This Court finds the analyses of *Bright* and *Clay* to be more persuasive interpretations of the FLSA and the case law and regulations that have construed it. To the extent that *Armitage* might serve as persuasive authority, the Court notes that the conditions of on-call duty were more intrusive in that case. First, the plaintiffs received callbacks on average 1.89 times per week. 782 F.Supp. at 540. Furthermore, the plaintiffs in *Armitage* had only a ten mile range on their beepers and a strict ten minute response time, which effectively required them to remain within the city limits of Emporia, Kansas. *Id.* These restrictions are not present in McIntyre's case.

guish it from those cases previously cited denying compensation.

■ In addition to the conditions of his employment, McIntyre has urged consideration of his personal view of the effect of his duties on his personal life as well as some of the view expressed by certain supervising employees within the Department regarding his compensation. The restrictions upon McIntyre would not significantly alter the lives of a large number of people, while some others might feel differently. For instance, those who rank frequent and spontaneous travel as a high priority might have to alter their personal habits. Some individuals might even be bothered by the knowledge that they could be called even though they are free to use their own personal time freely. The FLSA, however, does not guarantee a proper fit between each employer and employee. Nor does the FLSA purport to offer the appropriate level of compensation for the nation's employees. During McIntyre's period of service, a few of those within the Department apparently felt that the Division should offer some form of compensation for McIntyre's on-call duties, while others came to another conclusion. It may or may not be appropriate for the Division to offer this compensation. The Court takes no position on the issue, for it is irrelevant here.[10] Such decisions about employment are ordinarily made by workers and their employers, who are best situated to evaluate their own abilities and aspirations.

■ Congress designed the FLSA to eliminate "conditions detrimental to the minimum standard of living necessary for health, efficiency, and general well-being of workers" without "substantially curtailing employment or earning power." 29 *U.S.C.* § 202. In keeping with this limited purpose, "the FLSA's overtime provisions are more narrowly focused than being simply directed at oppressive or confining conditions of employment." *Bright,* 934 F.2d at 678. The case law and other authority demonstrate that the conditions of McIntyre's on-call duty do not violate the FLSA.

**10.** Indeed, it would be ironic if, in the name of employee rights, courts were to view these types of comments as giving rise to any form of

Accordingly, the Court will grant Division's motion for summary judgment on the remainder of the complaint and need not address the affirmative defense claimed by the Division under 29 *U.S.C.* § 259(a).

An order will be entered consistent with this Memorandum Opinion.

## FINAL JUDGMENT

For the reasons stated in the Court's Memorandum Opinion entered on this date, it is

ORDERED:

1. Summary judgment of dismissal is hereby granted in favor of the defendant, the Division of Youth Rehabilitation Services, Department of Services for Youth, Children and their Families, State of Delaware, and against the plaintiff, Roy McIntyre, with regard to all claims for overtime compensation that accrued prior to March 13, 1989; and

2. Summary judgment is hereby granted in favor of the defendant, the Division of Youth Rehabilitation Services, Department of Services for Youth, Children and their Families, State of Delaware, and against the plaintiff, Roy McIntyre, with regard to all claims for overtime compensation accruing on or after March 13, 1989.

entitlement, for this might chill any favorable discussion of an employee's performance that could lead to a promotion or an increase in pay.